**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF VIRGINIA**
**NORFOLK DIVISION**

| | | |
|---|---|---|
| **KEITH CARROLL,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | **Case No: 2:17-cv-521-MSD-LRL** |
| **v.** | ) | |
| | ) | |
| | ) | |
| **ABNB FEDERAL CREDIT UNION** | ) | |
| **("ABNBFCU")** | ) | |
| | ) | |
| **Defendant.** | ) | |

## PLAINTIFF'S BRIEF IN OPPOSITION TO DEFENDANT'S MOTION TO DISMISS

# TABLE OF CONTENTS

PLAINTIFF'S BRIEF IN OPPOSITION TO DEFENDANT'S MOTION TO DISMISS ................1

INTRODUCTION & FACTUAL BACKGROUND ..........................................................................1

ARGUMENT ....................................................................................................................................2

   A.  Plaintiff's Number of Lawsuits Is Irrelevant to Deciding This Motion. ....................................2

   B.  Plaintiff's Action Does Not Violate Defendant's Right to Due Process...................................4

      1.  The DOJ's Long-Standing Position Has Been that Websites of Places of Public Accommodation Must Be Equally Accessible. ............................................................................5

      2.  The Overwhelming Majority of Cases Supports Plaintiff's Position. ...................................9

   C.  Defendant's Website Is Subject to the ADA Irrespective of Whether the Court Determines a Website Itself Is a Place of Public Accommodation. ...............................................................12

      1.  The Legislative History of the ADA Makes It Clear that the ADA Was Intended to Adapt to Changes in Technology and to Be Broadly Construed as a Remedial Statute. ......................17

      2.  *Noah v. AOL Time Warner* Is Not Only Non-Binding, It Is Distinguishable and Unpersuasive...............................................................................................................................18

      3.  *Innes v. Board of Regents of the Univ. Sys. of Md.* Supports Plaintiff's Position. ..............20

   D.  "Membership" Does Not Determine Standing to Sue...........................................................21

   E.  Defendant's Telephone Service Affirmative Defense Is Not a Proper Basis on Which to Dismiss the ADA Claim...............................................................................................................23

      1.  Defendant Seeks to Improperly Introduce Evidence That Is Beyond the Four Corners of the Complaint................................................................................................................................24

      2.  *Access Now, Inc. v. Blue Apron, LLC* Shows that Defendant's Affirmative Defense Is Premature to Resolve. ................................................................................................................24

      3.  Defendant's Telephone Service Defense Is Governed by the DOJ's Existing Regulation on Auxiliary Aids and Services, and Not the 2010 ANPRM. ......................................................25

      4.  Defendant Has Failed to Demonstrate that It Has Even Met the ANPRM's Purported Requirements. .............................................................................................................................25

      5.  Defendant Does Not, and Cannot, Establish that Its Banner and Telephone Numbers Are Proper Auxiliary Aids Under the ADA. ....................................................................................26

      6.  Plaintiff's ADA Claim Is Not Moot. .................................................................................28

CONCLUSION ...............................................................................................................................29

# TABLE OF AUTHORITIES

**Page(s)**

**Federal Cases**

*Access Now, Inc. v. Blue Apron, LLC*,
No. 17-cv-116-JL, 2017 WL 5186354 (D.N.H. Nov. 8, 2017)............................................*passim*

*Access Now, Inc. v. Southwest Airlines, Co.*,
227 F. Supp. 2d 1312 (S.D. Fla. 2002).......................................................................................19

*Adams v. SHRI Dwarkesh Investments, LLC*,
No. 6:15-cv-03261-MDH, 2015 WL 6755321 (W.D. Mo. Nov. 4, 2015)....................................3

*Alumni Cruises, LLC v. Carnival Corp.*,
987 F. Supp. 2d 1290 (S.D. Fla. 2013)......................................................................................29

*Andrews v. Blick Art Materials, LLC*,
-- F. Supp. 3d. --, No. 17-CV-767, 2017 WL 3278898 (E.D.N.Y. Aug. 1, 2017)
(Weinstein, J.) ...............................................................................................11, 14, 17, 18

*Astiana v. Hain Celestial Group, Inc.*,
783 F.3d 753 (9th Cir. 2015)....................................................................................................10

*Baughman v. Walt Disney World Co.*,
685 F.3d 1131 (9th Cir. 2012)..................................................................................................18

*Blue Cross Blue Shield of Massachusetts, Inc. v. BCS Ins. Co.*,
671 F.3d 635 (7th Cir. 2011)......................................................................................................4

*Botosan v. Paul McNally Realty*,
216 F.3d 827 (9th Cir. 2000)......................................................................................................5

*Brooke v. A-Ventures, Inc.*,
No. 2:17-cv-2868-HRH, 2017 WL 5624941 (D. Ariz. Nov. 22, 2017)......................................28

*Camreta v. Greene*,
563 U.S. 692, 131 S. Ct. 2020 (2011) .......................................................................................19

*Carparts Distribution Ctr., Inc. v. Automotive Wholesalers Assoc. of New England,
Inc.*,
37 F.3d 12 (1st Cir. 1994) ........................................................................................................14

*Civil Rights Educ. and Enforcement Center v. Hospitality Props. Trust*,
867 F.3d 1093 (9th Cir. 2017).....................................................................................................2

*Colorado Cross Disability Coalition v. Abercrombie & Fitch Co*.,
765 F.3d 1205 (10th Cir. 2014)...................................................................................................3

ii

*D'Lil v. Best Western Encina Lodge & Suites*,
538 F.3d 1031 (9th Cir. 2008) .................................................................... 3

*De La Rosa v. Lewis Foods of 42nd Street, LLC*,
124 F. Supp. 3d 290 (S.D.N.Y. 2015) ....................................................... 2

*Disabled Rights Action Committee v. Las Vegas Events, Inc.*,
375 F.3d 861 (9th Cir. 2004) ............................................................. 8, 23

*Doe v. Mutual of Omaha Ins. Co.*,
179 F.3d 557 (7th Cir. 1999) ................................................................. 14

*Enyart v. National Conference of Bar Examiners, Inc.*,
630 F.3d 1153 (9th Cir. 2011) ............................................................... 18

*Enyart v. National Conference of Bar Examiners, Inc.*,
823 F. Supp. 2d 995 (N.D. Cal. 2011) .................................................... 4

*Fortyune v. City of Lomita*,
766 F.3d 1098 (9th Cir. 2014) ................................................................. 5

*Gil v. Winn-Dixie Stores, Inc.*,
242 F. Supp. 3d 1315 (S.D. Fla. Mar. 15, 2017) ............................... 14, 20

*Gil v. Winn-Dixie Stores, Inc.*,
257 F. Supp. 3d 1340 (S.D. Fla. 2017) .............................................. 11, 12

*Gniewkowski v. Lettuce Entertain You Enters., Inc.*,
251 F. Supp. 3d 908 (W.D. Pa. 2017) ................................................. 2, 22

*Gomez v. Bang & Olufsen Am., Inc.*,
No.: 1:16-cv-23801—LENARD, 2017 WL 1957182 (S.D. Fla. Feb. 2, 2017) ......................... 15

*Gordon v. Virtumundo, Inc.*,
575 F.3d 1040 (9th Cir. 2009) (Gould, J., concurring) ............................. 3

*Gorecki v. Dave & Buster's Inc.*,
No. 2:17-cv-01138-PSG-AGR [ECF #39 at 3-6] (C.D. Cal. Oct. 10, 2017)
(denying defendant's motion for summary judgment in an ADA website case
premised upon lack of due process) (RJN Ex. 4) ..................................... 10

*Gorecki v. Hobby Lobby Stores, Inc.*,
2017 WL 2957736 (C.D. Cal. June 15, 2017) .................................... 8, 10

*Hason v. Med. Bd. of Cal.*,
279 F.3d 1167 (9th Cir. 2002) ............................................................... 18

*Haynes v. Interbond Corp. of America*,
  No. 17-CIV-61074, 2017 WL 4863085 (S.D. Fla. Oct. 16, 2017)..........................................2, 29

*Houston v. Marod Supermarkets, Inc.*,
  733 F.3d 1323 (11th Cir. 2013)...................................................................................................3

*Innes v. Board of Regents of the Univ. Sys. Of Md.*,
  29 F. Supp. 3d 566 (D. Md. 2014) .....................................................................................20, 21

*Lozano v. C.A. Martinez Family Ltd. Partnership*,
  129 F. Supp. 3d 967 (S.D. Cal. 2015) .......................................................................................29

*Markett v. Five Guys Enterprises LLC*,
  No. 1:17-cv-00788-KBF, 2017 WL 5054568 (S.D.N.Y. July 21, 2017) ..............................15, 29

*Molski v. Evergreen Dynasty Corp.*,
  500 F.3d 1047 (9th Cir. 2007).....................................................................................................3

*Molski v. Evergreen Dynasty Corp.*,
  521 F.3d 1215 (9th Cir. 2008) (Berzon, J., dissenting from denial of rehearing en
  banc)...........................................................................................................................................3

*Molski v. M.J. Cable, Inc.*,
  481 F.3d 724 (9th Cir. 2007).....................................................................................................22

*Morgan v. Joint Admin. Bd., Ret. Plan of the Pillsbury Co. and Am. Fed'n of Grain
  Millers, AFL-CIO-CLC*,
  268 F.3d 456 (7th Cir. 2001).....................................................................................................14

*National Ass'n of the Deaf, et al. v. Harvard University, et al.*,
  Civil Action No. 3:15-cv-30023-MGM (D. Mass. case filed 2/12/15) (RFJN, Ex.
  1)..................................................................................................................................................7

*National Ass'n of the Deaf, et al. v. Massachusetts Institute of Technology, et al.*,
  Civil Action No. 3:15-cv-30024-MGM (D. Mass. case filed 2/12/15) .........................................8

*National Association of the Deaf v. Netflix, Inc.*,
  869 F. Supp. 2d 196 (D. Mass. 2012) .......................................................8, 13, 15, 17

*National Federation of the Blind v. Scribd Inc.*,
  97 F. Supp. 3d 565 (D. Vt. 2015).........................................................5, 6, 13, 15

*National Federation of the Blind v. Target Corp.*,
  452 F. Supp. 2d 946 (N.D. Cal. 2006) .......................................................13, 16, 17

*Native American Arts, Inc. v. Peter Stone Co., U.S.A., Inc.*,
  222 F. Supp. 3d 643 (N.D. Ill. 2016), *appeal docketed*, No. 16-4278 (7th Cir.
  Dec. 30, 2016) ....................................................................................................3, 4

*New v. Lucky Brand Dungarees Stores, Inc.*,
No. 14-CV-20574 [ECF No. 19 at 6] (S.D. Fla. Apr. 10, 2014) ................................... 8

*Noah v. AOL Time Warner, Inc.*,
261 F. Supp. 2d 532 (E.D. Va. 2003), *aff'd sub nom.,* 2004 WL 602711 (4th Cir.
Mar. 24, 2004) ............................................................................................... 18, 19, 20

*Pallozzi v. Allstate Life Ins. Co.*,
198 F.3d 28 (2d Cir. 1999) ..................................................................................... 14

*PGA Tour v. Martin*,
532 U.S. 661 (2001) ................................................................................................ 22

*Reed v. CVS Pharmacy, Inc.*,
No. CV 17-3877-MWF, 2017 WL 4457508 (C.D. Cal., Oct. 3, 2017) ..................... 10

*Rendon v. Valleycrest Productions, Ltd.*,
294 F.3d 1279 (11th Cir. 2002) ............................................................................... 15

*Rios v. New York & Co., Inc.*,
No. 2:17-cv-04676-ODW(AGRx), 2017 WL 5564530 (C.D. Cal. Nov. 16, 2017).................... 10

*Robles v. Dominos Pizza, LLC*,
2017 WL 1330216 (C.D. Cal. Mar. 20, 2017), *appeal docketed*, No. 17-55504
(9th Cir. Apr. 13, 2017) ............................................................................. 9, 10, 11, 12

*Robles v. Yum! Brands d/b/a Pizza Hut*,
No. CV-16-08211-ODW (C.D. Cal. filed Nov. 3, 2016) ............................................ 10

*Safari Club Int'l v. Rudolph*,
845 F.3d 1250 (9th Cir. 2017) ................................................................................... 9

*Shields v. Walt Disney Parks and Resorts US, Inc.*,
279 F.R.D. 529 (C.D. Cal. 2011) ........................................................................ 12, 16

*Torres v. AT & T Broadband, LLC*,
158 F. Supp. 2d 1035 (N.D. Cal. 2001) .................................................................... 20

*Weyer v. Twentieth Century Fox Film Corp.*,
198 F.3d 1104 (9th Cir. 2000) ................................................................................. 15

## Other State Cases

*National Fed. of the Blind, et al. v. HRB Digital LLC, et al.*,
No. 1:13-cv-10799-GAO ........................................................................................... 8

## Federal Statutes

U.S.C. 12181(7)(F).............................................................................................. 13, 20

42 U.S.C.
  § 2000a(b)(3) ............................................................................................................ 19
  § 2000a *et seq.* ........................................................................................... 19, 20, 21
  § 12181(7) ................................................................................................................ 13
  § 12182(a) ........................................................................................................... *passim*
  § 12182(b)(2)(A)(ii) ................................................................................................. 4, 5
  § 12182(b)(2)(A)(iii) .................................................................................................... 4
  § 12188(a) ................................................................................................................ 21
  § 12188(a)(1) .............................................................................................................. 3
  § 12188(a)(1) and (2) .............................................................................................. 2, 12

## Other Authorities

28 C.F.R. § 36.201(a) ................................................................................................... 4, 13

28 C.F.R. §§ 36.201(a), 36.303(a), (b)(2), (c)(1)(ii), A ...................................................... 4

28 C.F.R. § 36.303 ...................................................................................................... 4, 25

28 C.F.R. § 36.303(a) ..................................................................................................... 27

28 C.F.R. § 36.303(b)(2) ................................................................................................ 27

28 C.F.R. § 36.303(c)(1) .................................................................................................. 4

28 C.F.R. § 36.303(c)(1)(ii) ....................................................................................... 4, 27

28 C.F.R. § 36.406(b) ..................................................................................................... 23

75 Fed. Reg. 43460 (July 26, 2010) ............................................................................... 25

75 Fed. Reg. 43460-01 (July 26, 2010) ............................................................................ 6

75 Fed. Reg. 43460-01 .................................................................................................... 6

75 Fed. Reg. 43460, 43463 (July 26, 2010) ................................................................... 18

75 Fed. Reg. 43460, 43464 (July 26, 2010) ..................................................................... 6

75 Fed. Reg. at 43466 ............................................................................................... 25, 29

DOJ's *HRB consent decree* ............................................................................................. 9

*Hearing Before the House Subcommittee on the Constitution of the House Committee*
  *on the Judiciary*, 106th Cong., 2d Sess. 65-010 (2000) ................................................ 5

FRCP Rule 12(b)(6) .................................................................................................... 2, 28

Comes now Plaintiff, Keith Carroll, by counsel, and hereby presents this Brief in Opposition to Defendant's Motion to Dismiss.  In support thereof, Plaintiff provides the following:

## INTRODUCTION & FACTUAL BACKGROUND

Defendant is a credit union with 18 bank locations throughout this District.  (*See* abnbfcu.org, last visited December 7, 2017).  Defendant's website, abnbfcu.org, is a service, privilege, and advantage of its bank locations.  (Compl. ¶¶ 4, 10, 11, 12, 14, 17-19.)   Specifically, Defendant's website provides a breadth of information, including but not limited to, details about its locations and services, including a bank branch and ATM locator for its 18 locations, hours and days of operation, information about its types of accounts, its loans and types thereof, information on investments and insurance, online or in-store enrollment, a "careers" page for employment opportunities at its bank locations, and an "about us" page to learn about the credit union.  (*Id*. ¶¶ 3, 4, 10-15, 19) (last visited Dec. 7, 2017).  Additionally, Defendant's website tells online users, irrespective of membership, "We'd love to see you in person! Please feel free to drop into any branch location near you."  (*See* abnbfcu.org/about-us/locations-hours/) (last visited Dec. 7, 2017).

Plaintiff is a permanently blind resident of this District who uses screen reading software to navigate the internet.  (Compl. ¶ 3.)  Beginning in September 2017, Plaintiff attempted to access Defendant's website to learn about its services and locations.  (*Id.* ¶¶ 3, 4, 7, 15.)  Plaintiff was denied equal access to Defendant's website based on his disability due to the numerous accessibility barriers thereon, including, but not limited to, linked images missing alternative text, empty links, redundant links, and empty or missing form labels.  (*Id.* ¶ 13.)  The access barriers on abnbfcu.org caused a denial of Plaintiff's full and equal access multiple times.  Similarly, the access barriers deterred Plaintiff from visiting Defendant's bank locations.  (*Id.* ¶ 3.)

1

Based on the accessibility barriers on Defendant's website that prevented, and continue to prevent, Plaintiff's full and equal enjoyment of Defendant's website and physical locations, Plaintiff filed one claim for relief against Defendant for its violation of Title III of the ADA. (*Id.* ¶¶ 16-21.) Under the explicit injunctive relief provisions of the ADA, Plaintiff prayed for injunctive relief - namely that Defendant's website be "readily accessible to and usable by individuals with disabilities" which may be in the form of "requiring the provision of an auxiliary aid or service, modification of a policy, or provision of alternative methods" as specifically set forth by the ADA and to the extent determined by this Court. 42 U.S.C. § 12188(a)(1) and (2); (Complaint at Prayer).

## ARGUMENT

### A.    Plaintiff's Number of Lawsuits Is Irrelevant to Deciding This Motion.

In a blatant attempt to bias the Court, Defendant contends that Plaintiff has filed multiple actions in the state of Virginia. (Mot. at 1.) As a federal court held in a recently published decision in response to a similar argument, "[t]his assertion is wholly irrelevant to a motion for dismissal under Rule 12(b)(6) or 12(b)(1)." *Gniewkowski v. Lettuce Entertain You Enters., Inc.*, 251 F. Supp. 3d 908, 918 (W.D. Pa. 2017); *De La Rosa v. Lewis Foods of 42nd Street, LLC*, 124 F. Supp. 3d 290, 293 n.5 (S.D.N.Y. 2015) (stating that the fact that the ADA plaintiff is a "frequent filer" who is a plaintiff in dozens of cases "does not affect the Court's analysis"); *see also Haynes v. Interbond Corp. of America*, No. 17-CIV-61074, 2017 WL 4863085, at *2 (S.D. Fla. Oct. 16, 2017). Serial ADA litigation is not improper. *Civil Rights Educ. and Enforcement Center v. Hospitality Props. Trust*, 867 F.3d 1093, 1096 (9th Cir. 2017) (holding that "a plaintiff has constitutional standing" even if "her only motivation for visiting a facility is to test it for ADA compliance"); *id.* at 1102 ("We . . . conclude that motivation is irrelevant to the question of standing under Title III of the ADA. The Named Plaintiffs' status as ADA testers thus does not deprive them of standing."); *id.* at 1101-02 (noting that

42 U.S.C. § 12182(a) states that "*[n]o individual* shall be discriminated against on the basis of disability" and noting that Title III provides remedies for "any person" subjected to illegal disability discrimination as stated in 42 U.S.C. § 12188(a)(1)) (emphasis in original); *Colorado Cross Disability Coalition v. Abercrombie & Fitch Co*., 765 F.3d 1205, 1211 (10th Cir. 2014) ("anyone who has suffered an invasion of the legal interest protected by Title III may have standing, regardless of his or her motivation in encountering the invasion"); *id.* at 1216 ("a plaintiff's status as tester is irrelevant in determining whether she has suffered an injury in fact under Title III of the ADA."); *Houston v. Marod Supermarkets, Inc*., 733 F.3d 1323, 1330–40 (11th Cir. 2013) (finding the plaintiff's tester motive behind his visit to supermarket did not foreclose standing for his claim under Title III of the ADA); *id.* at 1332 ("The substantive right conferred by [the ADA] statute is to be free from disability discrimination in the enjoyment of the facility, regardless of [plaintiff's] motive for visiting the facility."); *id.* ("Nothing in that statutory language precludes standing for tester plaintiffs; if anything, 'no individual' and 'any person' are broad terms that necessarily encompass testers.").[1]

"Such is the nature of 'private-attorney-general' provisions: Congress perceives a wrong but finds it too costly to enforce the law it passes to address that wrong." *Native American Arts, Inc. v.*

---

[1] *See also Adams v. SHRI Dwarkesh Investments, LLC*, No. 6:15-cv-03261-MDH, 2015 WL 6755321, at *3 (W.D. Mo. Nov. 4, 2015) ("Federal appellate case law makes clear, however, that 'tester' status does not deprive a plaintiff of standing under Title III of the ADA."); *Gordon v. Virtumundo, Inc*., 575 F.3d 1040, 1069 (9th Cir. 2009) ("we accord standing to individuals who sue defendants that fail to provide access to the disabled in public accommodation as required by the Americans with Disabilities Act ("ADA"), *even if we suspect that such plaintiffs are hunting for violations just to file lawsuits*.") (Gould, J., concurring) (emphasis added); *Molski v. Evergreen Dynasty Corp*., 521 F.3d 1215, 1220 (9th Cir. 2008) ("while self-interest surely drives serial access litigation in part, the reason there *can* be so many lawsuits about access to public accommodations is that there are so many violations of the laws that seek to assure access.") (Berzon, J., dissenting from denial of rehearing en banc) (emphasis in original); *Molski v. Evergreen Dynasty Corp*., 500 F.3d 1047, 1062 (9th Cir. 2007) ("For the ADA to yield its promise of equal access for the disabled, it may indeed be necessary and desirable for committed individuals to bring serial litigation advancing the time when public accommodations will be compliant with the ADA."); *D'Lil v. Best Western Encina Lodge & Suites*, 538 F.3d 1031, 1040 (9th Cir. 2008) (same).

*Peter Stone Co., U.S.A., Inc.*, 222 F. Supp. 3d 643, 647 (N.D. Ill. 2016), *appeal docketed*, No. 16-4278 (7th Cir. Dec. 30, 2016). "[W]ith damages far outstripping the actual loss, it is not surprising that suits like this are filed; private-attorney-general statutes are meant to encourage this." *Id.* "The fact that statutes . . . give rise to 'cottage industries' can't be laid at the feet of attorneys who take advantage of them." *Id.* "The statute is what it is, and judges must implement its rule whether or not they think it wise . . . ." *Blue Cross Blue Shield of Massachusetts, Inc. v. BCS Ins. Co.*, 671 F.3d 635, 638 (7th Cir. 2011).

## B.      Plaintiff's Action Does Not Violate Defendant's Right to Due Process.

Defendant argues that applying Title III of the ADA to commercial websites violates Defendant's right to due process. (Mot. at 10.) Not so. Defendant ignores that the existing ADA statutes cover commercial websites either via its general non-discrimination provision (42 U.S.C. § 12182(a)), its reasonable modifications in policies, practices, or procedures provision, (42 U.S.C. § 12182(b)(2)(A)(ii)), or via its auxiliary aid provision (42 U.S.C. § 12182(b)(2)(A)(iii)).[2] Plaintiff is relying upon unambiguous regulations promulgated by the DOJ decades ago. *See* 28 C.F.R. §§ 36.201(a), 36.303(a), (b)(2), (c)(1)(ii).[3] Thus, regardless of whether this Court analyzes Plaintiff's claim under the ADA's general nondiscrimination statute, 42 U.S.C. § 12182(a), and its general implementing regulation, 28 C.F.R. § 36.201(a), or based on the ADA's specific "auxiliary aids and services" provisions set forth in 42 U.S.C. § 12182(b)(2)(A)(iii) and 28 C.F.R. § 36.303, or based on

---

[2] The ADA's auxiliary aid provision is an affirmative defense, which exempts public accommodations from the obligation to provide auxiliary aids or services if doing so would fundamentally change the nature of the good or service, or result in an undue burden. "Undue burden" is a "high bar." *Enyart v. National Conference of Bar Examiners, Inc.*, 823 F. Supp. 2d 995, 1014 (N.D. Cal. 2011).

[3] A plaintiff's entitlement is to receive auxiliary aids and services that provide "effective communication" under 28 C.F.R. § 36.303(c)(1). That regulation expressly states that the auxiliary aids and services must be provided "in such a way as to protect the privacy and independence of the individual with a disability." 28 C.F.R. § 36.303(c)(1)(ii).

the ADA's requirement to provide reasonable modifications in policies, practices, or procedures, 42 U.S.C. § 12182(b)(2)(A)(ii), the statutory and regulatory notice to commercial website owners and operators that their websites needed to comply with the ADA's "full and equal" enjoyment requirement has been plain and obvious for literally decades.  As explained by the Ninth Circuit, "an *imprecise* but comprehensible normative standard" does not render a statute as vague for purposes of due process.  *Botosan v. Paul McNally Realty*, 216 F.3d 827, 836 (9th Cir. 2000) (emphasis added). And, the Ninth Circuit has held that "***the lack of specific regulations cannot eliminate a statutory obligation***."  *Fortyune v. City of Lomita*, 766 F.3d 1098, 1102 (9th Cir. 2014) (emphasis added) (rejecting a defendant's due process argument that the defendant lacked notice that the ADA's general mandate to eliminate discrimination against disabled persons applied even absent technical specifications); *id.* at 1100-06 (holding that the plaintiff stated claims under the ADA and CDPA based on the City's alleged failure to provide accessible on-street diagonal stall parking irrespective of whether the DOJ has adopted technical specifications for on-street parking).

### 1.     The DOJ's Long-Standing Position Has Been that Websites of Places of Public Accommodation Must Be Equally Accessible.

The DOJ has consistently "taken the position that the ADA applies to the Internet and web-based goods and services providers."  *National Federation of the Blind v. Scribd Inc.*, 97 F. Supp. 3d 565, 574 (D. Vt. 2015) (citing Letter from Deval L. Patrick, Assistant Att'y Gen., to Senator Tom Harkin (Sept. 9, 1996) ("Covered entities under the ADA are required to provide effective communication, regardless of whether they generally communicate through print media, audio media, or computerized media such as the Internet."); *Applicability of the Americans with Disabilities Act (ADA) to Private Internet Sites: Hearing Before the House Subcommittee on the Constitution of the House Committee on the Judiciary*, 106th Cong., 2d Sess. 65-010 (2000) ("It is the opinion of the

Department of Justice currently that the accessibility requirements of the Americans with Disabilities Act already apply to private Internet Web sites and services."); 75 Fed. Reg. 43460-01 (July 26, 2010) ("The Department believes that title III reaches the Web sites of entities that provide goods or services that fall within the 12 categories of 'public accommodations,' as defined by the statute and regulations."). The *Scribd* court noted further that, "[t]he DOJ is currently in the process of promulgating regulations that would codify the position it has taken in order to establish requirements for making websites accessible." *See* 75 Fed. Reg. 43460-01." 97 F. Supp. 3d at 574-75. The DOJ has expressly stated that, "**the Department has been clear that the ADA applies to Web sites of private entities that meet the definition of 'public accommodations**.'" 75 Fed. Reg. 43460, 43464 (July 26, 2010) (emphasis added).

Although Defendant references testimony in 2000, (Mot. at 3 n.1), Defendant ignores the News Release setting forth the testimony of Principal Deputy Assistant Attorney General for Civil Rights, Samuel R. Bagenstos, before the House Subcommittee on the Constitution, Civil Rights and Civil Liberties on April 22, 2010, 2010 WL 1634981 (Apr. 22, 2010), which states in relevant part:

> "***The Department of Justice has long taken the position that*** both state and local government websites and ***the websites of private entities that are public accommodations are covered by the ADA. In other words, the websites of entities covered by*** both Title II and ***Title III of the statute are required by law to ensure that their sites are fully accessible to individuals with disabilities.*** The Department is considering issuing guidance on the range of issues that arise with regard to the Internet sites of private businesses that are public accommodations covered by Title III of the ADA. In so doing, the Department will solicit public comment from the broad range of parties interested in this issue.") ("As to private places of public accommodation, only two cases - both in federal district courts - have specifically addressed the application of ADA Title III to their websites, and those cases have reached different conclusions. But ***the position of the Department of Justice has been clear: Title III applies to the Internet sites and services of private entities that meet the definition of "public accommodations" set forth in the statute and implementing regulations. The Department first made this position public in a 1996 letter from Assistant Attorney General Deval Patrick responding to an inquiry by Senator Harkin regarding the accessibility of websites to individuals with visual impairments. The letter has been widely cited as illustration of the Department's position.*** The letter does not state whether entities doing business exclusively on the Internet are covered by the ADA. ***In 2000, however, the***

*Department filed an amicus brief in the Fifth Circuit in Hooks v. OKbridge, which involved a web-only business; the Department's brief explained that a business providing services solely over the Internet is subject to the ADA's prohibitions on discrimination on the basis of disability. And in a 2002 amicus brief in the Eleventh Circuit in Rendon v. Valleycrest Productions, the Department argued against a requirement, imposed outside of the Internet context by some federal courts of appeals, that there be a nexus between the challenged activity and a private entity's brick-and-mortar facility to obtain coverage under Title III. Although Rendon did not involve the Internet, our brief argued that Title III applies to any activity or service offered by a public accommodation either on or off the premises.*") ("Pursuant to [the ADA and the Rehabilitation Act], *access to the Internet and emerging technologies is not simply a technical matter, but a fundamental issue of civil rights*.") ("*Ensuring nondiscriminatory access to the goods and services offered through the Internet is therefore essential to full societal participation by individuals with disabilities*.") ("*For many individuals with disabilities who are limited in their ability to travel or who are confined to their homes, the Internet is one of the few available means of access to the goods and services of our society*. The broad mandate of the ADA to provide an equal opportunity for individuals with disabilities to participate in and benefit from all aspects of American civic and economic life will be served in today's technologically advanced society *only if it is clear to businesses,* employers and educators, among others, *that their web sites must be accessible*."

*Id.* (emphasis added).  Notably, the DOJ recognized:

"Ensuring that people with disabilities have a full and equal opportunity to access the benefits of emerging technologies is an essential part of our disability rights enforcement at the Department of Justice.  Because the Internet was not in general public use when Congress enacted the ADA and the Attorney General promulgated regulations to implement it, neither the statute nor the regulations expressly mention it[,] *[b]ut the statute and regulations create general rules designed to guarantee people with disabilities equal access to all of the important areas of American civic and economic life, [a]nd the Department made clear, in the preamble to the original 1992 ADA regulations, that the regulations should be interpreted to keep pace with developing technologies.*"

*Id.* (emphasis added).

More recently, the DOJ has filed Statement of Interest briefs in several federal court actions continuing to make its position clear that the ADA currently obligates operators of websites to provide effective communication to disabled individuals to ensure equal access to commercial websites. *National Ass'n of the Deaf, et al. v. Harvard University, et al.*, Civil Action No. 3:15-cv-30023-MGM

[ECF #33 at 2, 8, 10-11] (D. Mass. case filed 2/12/15) (RFJN, Ex. 1)[4]; *New v. Lucky Brand Dungarees Stores, Inc.*, No. 14-CV-20574 [ECF No. 19 at 6] (S.D. Fla. Apr. 10, 2014); (RFJN Ex. 3).

Thus, the DOJ has been actively enforcing the ADA against private operators of inaccessible commercial websites via its Statements of Interest, threatened or actual lawsuits resulting in consent decrees and settlement agreements with private website owners and operators, and other public pronouncements for nearly two decades.[5]  *See Netflix*, 869 F. Supp. 2d at 200-01 (quoting H.R. Rep. 101-485(II), at 108 (1990)) ("the Committee intends that the types of accommodation and services provided to individuals with disabilities, under all of the titles of this bill, should keep pace with the rapidly changing technology of the times"); *Gorecki v. Hobby Lobby Stores, Inc.*, 2017 WL 2957736, at *4 n.2 (C.D. Cal. June 15, 2017) (referring to courts' need to provide "substantial deference" to the DOJ's interpretations of the ADA and it being currently applicable to websites, adding the "DOJ's interpretation is not only reasonable; it also better effectuates the purpose of the ADA 'to provide clear, strong, consistent, enforceable standards addressing discrimination against individuals with disabilities'"); *Disabled Rights Action Committee v. Las Vegas Events, Inc.*, 375 F.3d 861, 876 (9th Cir. 2004).

_____

[4] The DOJ filed an effectively identical Statement of Interest in a case against Massachusetts Institute of Technology ("MIT") on June 25, 2015.  *See National Ass'n of the Deaf, et al. v. Massachusetts Institute of Technology, et al.*, Civil Action No. 3:15-cv-30024-MGM [ECF #34] (D. Mass. case filed 2/12/15); (RFJN Ex. 2).

[5] The DOJ has *consistently* enforced the ADA against commercial websites and obtained consent decrees and settlement agreements ensuring that commercial website conform to *at least* WCAG 2.0 Level AA Success Criteria.  *See, e.g.*, *National Fed. of the Blind, et al. v. HRB Digital LLC, et al.*, No. 1:13-cv-10799-GAO, Consent Decree [ECF #60 at pg. 5] (D. Mass. Mar. 24, 2014) ("*HRB consent decree*") ("By January 1, 2015, H&R Block shall ensure that www.hrblock.com . . . conform to, at minimum, the Web Content Accessibility Guidelines 2.0 Level A and AA Success Criteria ("WCAG 2.0 AA").") (RJN Ex. 5); *see* 2010 WL 1634981 (Apr. 22, 2010) ("There are several sets of standards describing how to make websites accessible to individuals with disabilities. Government standards for website accessibility were developed pursuant to Section 508. ***Many entities elect to use the standards that were developed and are maintained by the Web Accessibility Initiative, a subgroup of the World Wide Web Consortium ("W3C")***.") (emphasis added).

The existence of the foregoing DOJ enforcement efforts with use of WCAG 2.0 AA begs the question:  Did the DOJ act beyond its agency authority or "ultra vires" by entering into the *HRB consent decree*[6] and settlement agreements requiring conformance to WCAG 2.0 AA?  Defendant's due process argument necessarily suggests that the DOJ's *HRB consent decree* (and other enforcement efforts against commercial websites) constitute an unlawful exercise of the DOJ's authority.  Not surprisingly, Defendant does not address that argument (despite the fact that Defendant is surely aware of the *HRB consent decree*, which is prominently mentioned in the *Robles* decision relied upon by Defendant.  Its silence speaks volumes because it highlights the inherent contradiction in Defendant's position.

### 2.      The Overwhelming Majority of Cases Supports Plaintiff's Position.

Defendant's reliance upon *one* unpublished[7] district court opinion, *Robles v. Dominos Pizza, LLC*, 2017 WL 1330216 (C.D. Cal. Mar. 20, 2017), *appeal docketed*, No. 17-55504 (9th Cir. Apr. 13, 2017),[8] is misplaced.  Besides the fact that its due process analysis is dicta (as the decision dismissed the action ***without prejudice*** based upon the primary jurisdiction doctrine), *id.* at *8 ("The Court . . . **GRANTS** Defendant's Motion and **DISMISSES** each of Plaintiff's causes of action **without prejudice** pursuant to the primary jurisdiction doctrine"), *Robles* has been repeatedly rejected by multiple federal court decisions.[9]

---

[6] If HRB violates its consent decree, it is beyond dispute that the federal district judge would be expected to enforce it via WCAG 2.0 AA Success Criteria as per the consent decree's terms.

[7] *See Safari Club Int'l v. Rudolph*, 845 F.3d 1250, 1262 n.7 (9th Cir. 2017) (referring to Westlaw rulings as "unpublished").

[8] Defendant neglected to mention that *Robles* is currently on appeal to the Ninth Circuit.

[9] Although Defendant does not expressly rely on the primary jurisdiction doctrine, Defendant does mention that the Trump Administration has indefinitely put off issuing specific regulations regarding website accessibility.  (Mot. at 3.)  Such delay actually supports Plaintiff's position as recognized by Chief Judge Laplante in *Access Now, Inc. v. Blue Apron, LLC*, No. 17-cv-116-JL, 2017 WL 5186354 (D.N.H. Nov. 8, 2017), given that the DOJ has "affirmatively abandoned consideration of website-accessibility standards for the immediate future." *Id.* at *9 & n.19.  As the Ninth Circuit has held,

For example, in *Gorecki v. Hobby Lobby Stores, Inc.*, No. CV 17-1131-JFW(SKX), 2017 WL 2957736 (C.D. Cal. June 15, 2017), which was issued ***after*** the *Robles* decision, the district court considered the same due process argument raised by Defendant in the website accessibility context, but rejected it expressly via a detailed analysis. *Hobby Lobby* addresses the due process issue by pointing out that notice existed dating back to 1996, and thus the DOJ's position has been consistently maintained for over 20 years. *Hobby Lobby, id.* at *4 n.3, *5-*6. The *Hobby Lobby* decision expressly refers to the need of courts to provide "substantial deference" to the DOJ's interpretations of the ADA and it being currently applicable to websites. *Id.* at *3 n.2; *see also Rios v. New York & Co., Inc.*, No. 2:17-cv-04676-ODW(AGRx), 2017 WL 5564530, at *6 (C.D. Cal. Nov. 16, 2017) ("the lack of specific guidelines from the DOJ does not excuse Defendant from its obligation to comply with the general mandates of the ADA"); *Reed v. CVS Pharmacy, Inc.*, No. CV 17-3877-MWF (SKx), 2017 WL 4457508, at *5 (C.D. Cal., Oct. 3, 2017) (rejecting the defendant's due process argument in the website accessibility context as well as the holding in *Robles* in denying a motion to dismiss); *Gorecki v. Dave & Buster's Inc.*, No. 2:17-cv-01138-PSG-AGR [ECF #39 at 3-6] (C.D. Cal. Oct. 10, 2017) (denying defendant's motion for summary judgment in an ADA website case premised upon lack of due process) (RJN Ex. 4).

---

"[P]rimary jurisdiction is not required when a referral to the agency would significantly postpone a ruling that a court is otherwise competent to make." *Astiana v. Hain Celestial Group, Inc.*, 783 F.3d 753, 761 (9th Cir. 2015). It is also significant that the DOJ failed in intervene in *Robles v. Yum! Brands d/b/a Pizza Hut*, No. CV-16-08211-ODW [ECF #47] (C.D. Cal. filed Nov. 3, 2016), despite the invitation to do so within 60 days of the federal district court's order certifying a constitutional challenge on Aug. 22, 2017. "Common sense tells us that even when agency expertise would be helpful, a court should not invoke primary jurisdiction when the agency is aware of but has expressed no interest in the subject matter of the litigation." *Astiana*, 783 F.3d at 761. The DOJ's failure to intervene was expressly noted in *Access Now, Inc. v. Blue Apron, LLC*, *supra*, 2017 WL 5186354, at *9 n.20.

Defendant similarly omits *Andrews v. Blick Art Materials, LLC*, -- F. Supp. 3d. --, No. 17-CV-767, 2017 WL 3278898 (E.D.N.Y. Aug. 1, 2017) (Weinstein, J.), which addressed and rejected the same due process argument raised by Defendant in the website accessibility context.  Indeed, Judge Weinstein acknowledged that the *Robles* decision relied upon by Defendant as "***the only case supporting this argument***" (referring to the defendant's due process rights).  *Id.* at *17 (emphasis added).  Substantively, in applying the ADA implementing regulations, Judge Weinstein stated, "[Defendant] does not point to any word or term that is unconstitutionally vague.  A statute's use of the word 'reasonable' and similar terms is not constitutionally problematic."  *Id.*  The Court rejected the absence of published standards argument relied upon by Defendant and concluded, "The defendant's principal complaint appears to be that it wants there to be black-and-white rules for ADA compliance, and here, there may be shades of gray. But the anti-discrimination provisions the defendant is accused of violating are not simple checklists of clear-cut rules—they are standards that are meant to be applied contextually and flexibly. The "gray" the defendant complains of is a feature of the Act."  *Id.* The same flexibility is applicable here.[10]

Defendant's argument also ignores another case more recently decided than *Robles*, the Verdict and Order Following Non-Jury Trial in *Gil v. Winn-Dixie Stores, Inc.*, 257 F. Supp. 3d 1340 (S.D. Fla. 2017), whereby the United States District Court for the Southern District of Florida held a non-jury trial and found that the defendant, a supermarket chain, had violated the plaintiff's rights under the ADA by failing to maintain an accessible website.  There, the court applied an "undue burden" legal standard in concluding that "Winn-Dixie has presented no evidence to establish that it would be unduly burdensome to make its website accessible to visually impaired individuals."  257

---

[10] *See also Access Now, Inc., et al. v. Blue Apron, LLC,* No. 17-CV-116-JL, 2017 WL 5186354, at *1 (D.N.H., Nov. 8, 2017) (rejecting the Defendant's due process arguments in the website accessibility context upon a motion to dismiss).

F.3d at 1350.  In addition, ***the court in Winn-Dixie adopted the WCAG 2.0 accessibility standards for making the defendant's website accessible in its intended injunction***.  257 F. Supp. 3d at 1351.[11]

Defendant argues that Plaintiff, like the plaintiff in *Robles*, contends *only* compliance with Web Content Accessibility Guidelines (WCAG) 2.0, Level AA will ensure Defendant's compliance.  (Mot. at 10 n.5.)  Not so.  A cursory review of Plaintiff's Complaint refutes this argument.  Plaintiff *refers* to WCAG 2.0, Level AA as the industry standard in *two* paragraphs of his Complaint (Compl. ¶¶ 8, 9), but *prays* for equitable relief pursuant to 42 U.S.C. § 12188(a)(1)(2).  As such, Plaintiff's Complaint is unlike the complaint in *Robles*, but is instead more akin to the *multiple* decisions that have rejected and distinguished *Robles* regarding its due process remarks.

> **C.     Defendant's Website Is Subject to the ADA Irrespective of Whether the Court Determines a Website Itself Is a Place of Public Accommodation.**

Defendant argues that Title III of the ADA imposes "no obligations" on its website.  (Mot. at 16.)  In support, Defendant contends that the ADA does not apply to websites of places of public accommodation.  (Mot. at 11-16.)

As an initial matter, Defendant's argument is *contradicted by its own admission*.  On its website, Defendant states, "ABNB Federal Credit Union is committed to providing a website that is accessible to the widest possible audience ***in accordance with ADA standards and guidelines***."  (Mot. at 8) (emphasis added).

Moreover, Defendant begins its "public accommodation" arguments by providing the Court with a laundry list of physical places that constitute public accommodations under the ADA.  (Mot.

---

[11] *See also Shields v. Walt Disney Parks and Resorts US, Inc.*, 279 F.R.D. 529, 559 (C.D. Cal. 2011) (rejecting as "unpersuasive" Disney's argument that "there is no accepted accessibility standard" and the argument that the DOJ has yet to determine what standards to apply to websites and stating, "***The lack of a widely accepted standard for website accessibility does not preclude injunctive relief that would improve access to Defendants' websites by the visually impaired***.")  (emphasis added.).

at 11); 42 U.S.C. § 12181(7). What Defendant omits, however, is any analysis of the applicable language of the ADA's Title III mandate: "**No individual shall be discriminated against on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations _of_ any place of public accommodation** by any person who owns, leases (or leases to), or operates a place of public accommodation." 42 U.S.C. § 12182(a) (emphasis added); 28 C.F.R. § 36.201(a); *see National Federation of the Blind v. Target Corp.*, 452 F. Supp. 2d 946, 953 (N.D. Cal. 2006) ("The statute applies to the *services of* a place of public accommodation, not services in a place of public accommodation. To limit the ADA to discrimination in the provision of services occurring on the premises of a public accommodation would contradict the plain language of the statute.") (emphasis added); *National Association of the Deaf v. Netflix, Inc.*, 869 F. Supp. 2d 196, 201 (D. Mass. 2012) ("The ADA covers the services 'of' a public accommodation, not services 'at' or 'in' a public accommodation."); *National Federation of the Blind v. Scribd Inc.*, 97 F. Supp. 3d 565, 567-76 (D. Vt. 2015).

Accordingly, websites are services, privileges, advantages and accommodations of places of public accommodation. Defendant "assumes" that its branch locations are places of public accommodation for purposes of this Motion. (Mot. at 13 n.7.) It had no choice but to make such assumption due to its acknowledgment that "bank(s)" are public accommodations pursuant to 42 § U.S.C. 12181(7)(F). (Mot. at 13 n.7.) Defendant similarly does not, and cannot, deny that its website is offered to the public with information on its bank locations, services, hours of operation, etc., and is, thus, a "service[], … privilege[], advantage[], or accommodation[]" of its bank locations. 42 U.S.C. § 12182(a). As such, under the clear and plain language of the ADA, Defendant's website cannot discriminate in its accessibility on the basis of disability.

It is true that the courts are split as to whether a commercial website *itself* constitutes a place of public accommodation under the ADA.  While the Fourth Circuit has thus far declined to address via a precedential opinion whether a website is a place of public accommodation for purpose of the ADA, the First, Second and Seventh Circuits, along with some district courts, have applied an inclusive reading of "place of public accommodation" to ensure the intent of the ADA is applied to websites, alone, without any "brick and mortar" presence.  *See Carparts Distribution Ctr., Inc. v. Automotive Wholesalers Assoc. of New England, Inc.*, 37 F.3d 12, 19–20 (1st Cir. 1994) (holding that "public accommodations" encompasses more than actual physical structures and includes the defendant insurance company); *Doe v. Mutual of Omaha Ins. Co.*, 179 F.3d 557, 559 (7th Cir. 1999) (noting that a "place of public accommodation" encompasses facilities open to the public in both physical and electronic space, including websites); *Morgan v. Joint Admin. Bd., Ret. Plan of the Pillsbury Co. and Am. Fed'n of Grain Millers, AFL-CIO-CLC*, 268 F.3d 456, 459 (7th Cir. 2001) ("The defendant asks us to interpret 'public accommodation' literally, as denoting a physical site, such as a store or hotel but we have already rejected that interpretation."); *Pallozzi v. Allstate Life Ins. Co.*, 198 F.3d 28, 32-33 (2d Cir. 1999); *Gil v. Winn-Dixie Stores, Inc.*, 242 F. Supp. 3d 1315, 1318 (S.D. Fla. Mar. 15, 2017) ("Courts in the First, Second, and Seventh Circuits have found that the ADA can apply to a website independent of any connection between the website and a physical place.") (citing cases); *Andrews v. Blick Art Materials, LLC*, -- F. Supp. 3d --, 2017 WL 3278898, at *8 (E.D.N.Y. Aug. 1, 2017) (Weinstein, J.) ("This district court, as it must, adopts the Second Circuit's sensible approach to the ADA.  It is unambiguous that under Title III of the ADA, dickblick.com is a place of public accommodation."); *id.* at *7 (citing the Second Circuit's 1999 *Pallozzi* decision for the proposition that "[t]he Second Circuit Court of Appeals emphasized *that it is the sale of goods and services to the public, rather than how and where that sale is executed, that*

14

*is crucial* when determining if the protections of the ADA are applicable.") (emphasis in original); *Markett v. Five Guys Enterprises LLC*, No. 1:17-cv-00788-KBF, 2017 WL 5054568, at *2 (S.D.N.Y. July 21, 2017) ("the text and purposes of the ADA, as well as the breadth of federal appellate decisions, suggest that defendant's website is covered under the ADA . . . as its own place of public accommodation"); *National Federation of the Blind v. Scribd Inc.*, 97 F. Supp. 3d 565, 566-576 (D. Vt. 2015) (denying a motion to dismiss an ADA claim brought against the operator of a commercial website that did not operate any physical location open to the public); *National Association of the Deaf v. Netflix, Inc.*, 869 F. Supp. 2d 196, 200 (D. Mass. 2012) (denying motion for judgment on the pleadings and holding a website constituted a place of public accommodation).

Some courts have a narrower reading of "public accommodations" and require a ***nexus*** between the physical locations and the website of public accommodations to be subject to the ADA based on the "*of*" language explicitly included in the text of the ADA.  42 U.S.C. § 12182(a).  For example, the Ninth Circuit has thus far declined to hold explicitly that websites, alone, are places of public accommodation.  In *Weyer v. Twentieth Century Fox Film Corp.*, 198 F.3d 1104 (9th Cir. 2000), the Ninth Circuit interpreted the ADA as indicating that "some connection between the good or service complained of and an actual physical place is required."  198 F.3d at 1114.  The Ninth Circuit's interpretation "has been read to require a 'nexus' between the challenged service and the premises of the public accommodation." *National Federation of the Blind v. Scribd Inc.*, 97 F. Supp. 3d 565, 569 (D. Vt. 2015); *see also Rendon v. Valleycrest Productions, Ltd.*, 294 F.3d 1279, 1282 (11th Cir. 2002) ("Title III encompasses a claim involving telephonic procedures that, in this case, tend to screen out disabled persons from participation in a competition held in a tangible public accommodation."); *id.* at 1284 n.8; *Gomez v. Bang & Olufsen Am., Inc.,* No.: 1:16-cv-23801— LENARD, 2017 WL 1957182, at *4 (S.D. Fla. Feb. 2, 2017) ("All the ADA requires is that, if a

15

retailer chooses to have a website, the website cannot impede a disabled person's full use and enjoyment of the brick-and-motar [*sic*] store....").

In a similar matter with analogous facts, *National Federation of the Blind v. Target Corp.*, 452 F. Supp. 2d 946 (N.D. Cal. 2006), visually-impaired customers of Target Corporation ("Target") filed a class action complaint seeking declaratory, injunctive, and monetary relief, alleging that Target's website was inaccessible to the visually-impaired in violation of the ADA and California's civil rights statutes applicable to public accommodations.  The district court specifically declined to dismiss any of the plaintiffs' causes of action finding a sufficient nexus between Target's website and its retail stores, stating "the Ninth Circuit has stated that the 'ordinary meaning' of the ADA's prohibition against 'discrimination in the enjoyment of goods, services, facilities or privileges, is 'that *whatever* goods or services the place provides, it cannot discriminate on the basis of disability in providing enjoyment of those goods and services.'" 452 F. Supp. 2d 946 at 955 (citing *Weyer, supra,* 198 F.3d at 1113).  The court went on to state, "[I]t is clear that the purpose of the statute is broader than mere physical access—seeking to bar actions or omissions which impair a disabled person's "full enjoyment" of services or goods of a covered accommodation.  42 U.S.C. § 12182(a).  Indeed, the statute expressly states that the denial of equal "participation" ***or the provision of 'separate benefit[s]'*** are actionable under Title III." 452 F. Supp. 2d at 954 (citing 42 U.S.C. § 12182(b)(1)(A)) (emphasis added).

More recently, in *Shields v. Walt Disney Parks and Resorts US, Inc.*, 279 F.R.D. 529 (C.D. Cal. 2011), the Central District of California certified a website class of visually-impaired persons who used screen-reader software to use the defendants' websites based on the websites' inaccessibility.  279 F.R.D. at 560.  The website class was defined to state a nexus between the websites and the defendants' theme parks, hotels, restaurants, and stores.  *Id.* at 542.

16

"This narrow physical approach means, in practice, that the inaccessible website of a brick-and-mortar retail store could run afoul of the ADA if the website's inaccessibility interferes with the "full and equal enjoyment" of the goods and services offered at the physical store, but a business that operates solely through the Internet and has no customer-facing physical location is under no obligation to make their website accessible." *Blick Art Materials*, 2017 WL 3278898, at *5.

Here, without explicit guidance from the Fourth Circuit, the Court can adopt either reading of the ADA and still find that Defendant's inaccessible website violates the ADA.  The Court may read the ADA while acknowledging "that the purpose of the statute is broader than mere physical access—seeking to bar actions or omissions which impair a disabled person's "full enjoyment" of services or goods of a covered accommodation" as the First, Second and Seventh Circuits, and other district courts have done, and conclude that Defendant's website alone is a place of public accommodation. 42 U.S.C. § 12182(a); *Target Corp.*, 452 F. Supp. 2d at 954.  Alternatively, the Court may read the ADA as requiring a "nexus," as other Circuits have done, and still find that Plaintiff's Complaint survives a motion to dismiss because the unchallenged nexus between Defendant's branch locations and website is sufficiently pled throughout Plaintiff's Complaint.  (*See* Compl. ¶¶ 3, 4, 10, 14, 15, 17, 19.)  Either way, under the plain reading of the ADA, Plaintiff's Complaint more than adequately alleged Defendant's website, as a service and privilege of its branch locations, discriminates against Plaintiff on the basis of disability.

      **1.**      **The Legislative History of the ADA Makes It Clear that the ADA Was Intended to Adapt to Changes in Technology and to Be Broadly Construed as a Remedial Statute.**

As one federal court explained, "the legislative history of the ADA makes clear that Congress intended the ADA to adapt to changes in technology." *National Ass'n of the Deaf v. Netflix, Inc.*, 869 F. Supp. 2d 196, 200-01 (D. Mass. 2012) (quoting H.R. Rep. 101-485(II), at 108 (1990)) ("the

Committee intends that the types of accommodation and services provided to individuals with disabilities, under all of the titles of this bill, should keep pace with the rapidly changing technology of the times.").[12]  Thus, although the commercial use of the Internet didn't exist in 1990 at the time when the ADA was enacted into law, the ADA's legislative history and the case law interpreting the ADA clearly indicate that the ADA was intended to be broadly construed[13] and to keep pace with changes to technology.  *Enyart v. National Conference of Bar Examiners, Inc.*, 630 F.3d 1153, 1163 (9th Cir. 2011) ("[A]ssistive technology is not frozen in time: as technology advances, ... accommodations should advance as well.").

**2.    *Noah v. AOL Time Warner* Is Not Only Non-Binding, It Is Distinguishable and Unpersuasive.**

Defendant's reliance on *Noah v. AOL Time Warner, Inc.*, 261 F. Supp. 2d 532 (E.D. Va. 2003), *aff'd sub nom.*, 2004 WL 602711 (4th Cir. Mar. 24, 2004), to support its position that its website may discriminate against those with disabilities under the ADA is misplaced.  First, aside from the fact

---

[12] The DOJ's preamble to its 1991 Title III regulations stated that the regulations should be interpreted to keep pace with "emerging technology."  56 Fed. Register 35544-01, 35566 (July 26, 1991).  "New technology presents risks as well as opportunities; we must now allow fear of the former to deprive us of the latter."  *Baughman v. Walt Disney World Co.*, 685 F.3d 1131, 1137 (9th Cir. 2012) (reversing the district court's granting of the defendant's motion for summary judgment in an ADA case seeking the modification of a policy prohibiting the use of a Segway at Disneyland).

[13] *Hason v. Med. Bd. of Cal.*, 279 F.3d 1167, 1172 (9th Cir. 2002) (citing the "remedial goals underlying the ADA" and holding that "Courts must construe the language of the ADA broadly in order to effectively implement the ADA's fundamental purpose of 'provid[ing] a clear and comprehensive national mandate for the elimination of discrimination against individuals with disabilities.'") (citing cases); *see also Andrews v. Blick Art Materials, LLC*, -- F. Supp. 3d --, No. 17-CV-767, 2017 WL 3278898, at *10 (E.D.N.Y. Aug. 1, 2017) ("This broad interpretation [of ADA statutes] is proper because it is harmonious with the purpose of the ADA. . . . 'As a remedial statute, the ADA must be broadly construed to effectuate its purpose of providing a clear and comprehensive national mandate for the elimination of discrimination against individuals with disabilities.'"); 75 Fed. Reg. 43460, 43463 (July 26, 2010) ("the statute's broad and expansive nondiscrimination mandate reaches goods and services provided by covered entities on Web sites over the Internet.").

that *Noah* decision is now nearly 15 years old and predates the *vast* majority of case law specifically related to commercial website accessibility under the ADA (and is non-binding upon this court),[14] the plaintiff in *Noah* sued AOL-Time Warner under Title II of the Civil Rights Act of 1964, 42 U.S.C. § 2000a *et seq.*, and thus failed to address the actual question before this Court: the applicability of the ADA to commercial websites of places of public accommodation.

Indeed, *Noah*'s holding that AOL's chat room did not qualify as a place of public accommodation was explicitly confined to Title II's Civil Rights Act and was premised upon the plaintiff's own contention that a chat room was a "place of exhibition or entertainment" pursuant to 42 U.S.C. § 2000a(b)(3). *Id.* at 541. Unlike here, there was no nexus between AOL's chat room and a physical location. AOL has no places of public accommodation. Additionally, in comparing cases addressing public accommodations in the context of the ADA, the *Noah* court relied on several cases that put into sharp relief why Plaintiff's website accessibility claim under the ADA must survive here.

For example, *Noah* relied upon *Access Now, Inc. v. Southwest Airlines, Co.*, 227 F. Supp. 2d 1312, 1316 (S.D. Fla. 2002), which held that Southwest Airlines' website alone did not constitute a place of public accommodation; however, that case failed to survive the defendant's motion to dismiss explicitly because the Southern District of Florida determined that the plaintiffs failed to establish a nexus between the defendant's website and a physical, concrete place of public accommodation. *Access Now*, 227 F. Supp. 2d at 1321. Just as in *Noah*, in which AOL's website had no nexus to a physical place, so too was the case in *Access Now* whereby Southwest Airlines had no nexus to

---

[14] "A decision of a federal district court judge is not binding precedent in either a different judicial district, the same judicial district, or even upon the same judge in a different case." *Camreta v. Greene*, 563 U.S. 692, 131 S. Ct. 2020, 2033 n.7 (2011) (quoting 18 Moore's Federal Practice § 134.02[1][d]).

physical places pled.   These cases are wholly distinguishable from Plaintiff's Complaint, which pleads a nexus between Defendant's branch locations and its website.

Indeed, the Southern District of Florida has more recently held that "district courts in the Eleventh Circuit have found that websites are subject to the ADA if a plaintiff can establish a nexus between the website and the physical premises of a public accommodation." *Gil v. Winn Dixie Stores, Inc.*, 242 F. Supp. 3d 1315, 1320 (S.D. Fla. 2017); *id.* at 1321 ("The Court finds that the Plaintiff has sufficiently alleged a nexus between Winn-Dixie's website and its physical stores such that the Defendant is not entitled to judgment as a matter of law.").

*Noah* additionally relies on *Torres v. AT & T Broadband, LLC,* 158 F. Supp. 2d 1035 (N.D. Cal. 2001), but there, too, the district court rejected the notion that the digital cable system was a "place of public accommodation," because "in no way does viewing the system's images require the plaintiff to gain access to any actual physical public place."   *Noah*, 261 F. Supp. 2d at 544 (citing *Torres*, 158 F. Supp. 2d at 1038 and *Weyer,* 198 F.3d at 1114-16).   Furthermore, the *Torres* court sensibly concluded that the mere fact that the digital cable system relied on physical facilities to support and transmit its services did not convert the cable service into a "physical public place." *Id.* Again, *Torres* is distinguishable from Defendant's situation because the latter "assumes" for purposes of this Motion that its branches are places of public accommodation pursuant to 42 § U.S.C. 12181(7)(F).  (Mot. at 13 n.7.)  Plaintiff's Complaint sufficiently alleges that Defendant's website is a service, advantage, accommodation and privilege of its banking locations.

### 3.     *Innes v. Board of Regents of the Univ. Sys. of Md.* Supports Plaintiff's Position.

With respect to relevant case authority within the Fourth Circuit, this Court should rely instead upon *Innes v. Board of Regents of the Univ. Sys. Of Md.*, 29 F. Supp. 3d 566 (D. Md. 2014).  In *Innes*, deaf spectators sued a state university alleging discrimination under Title II of the ADA based on the

defendants' failure to provide effective communication for deaf spectators, in part, on the university's athletic websites.  The audio on the websites was not captioned.  "Plaintiffs assert that Defendants have failed to provide auxiliary aids and services to ensure effective communication with individuals who are deaf or hard of hearing concerning aural information: (1) available on Defendants' athletic websites . . . ." *Id.* at 571.  The defendants moved to dismiss.  The district court held that the plaintiffs stated a claim under Title II of the ADA.  *Id.* at 580-81.  The district court also held that the plaintiffs stated a claim under the Rehabilitation Act.  *Id.* at 582 ("Here, too, Plaintiffs argues that they are not placed on equal footing with hearing spectators of athletic events at Byrd Stadium and the Comcast Center, and fans who view videos of athletic events on the website. The allegations in the second amended complaint are sufficient to infer discrimination solely on the basis of Plaintiffs' disabilities.").  Although *Innes* did not involve Title III of the ADA, it still provides important guidance because it involves the exact same effective communication legal standard that applies to blind persons with respect to auxiliary aids and services.  And, it involves the accessibility of a website to disabled persons.

### D.    "Membership" Does Not Determine Standing to Sue.

Defendant contends that Plaintiff lacks Article III standing to challenge the inaccessibility of its website because he is not a "member" of Defendant's federal credit union.  (Mot. at 16.)

To plead a cause of action under the ADA, the plaintiff must establish that (1) he is disabled within the meaning of the ADA (42 U.S.C. § 12182(a)); (2) the place of public accommodation or service and privilege thereof must be governed by Title III of the ADA (42 U.S.C. § 12182(a)); and (3) that he either personally encountered or has actual knowledge of an accessibility barrier precluding his full and equal enjoyment of the facility/website (42 U.S.C. § 12188(a)).  Plaintiff has pled each of the foregoing requirements for standing in his Complaint.  Plaintiff's Complaint contains allegations

concerning Defendant's inaccessible website which violates the ADA.  Indeed, Plaintiff specifically identifies the types of barriers experienced on Defendant's website, including, but not limited to, missing alternative text, redundant links, and empty or missing form labels.  (Compl.  ¶ 13.)  Plaintiff has set forth not only a plausible claim for relief under the ADA, but a probable one.

A plaintiff's enrollment or membership in an organization, or lack thereof, does not determine his standing to sue.  Indeed, Defendant points to no authority holding as much.

Defendant ignores that the ADA does not impose a "client" or "customer" requirement to sue for relief.  The Supreme Court of the United States has affirmatively confirmed almost two decades ago that Title III of the ADA has no "clients or customers" limitation.  *PGA Tour v. Martin*, 532 U.S. 661, 679 (2001); *see also Molski v. M.J. Cable, Inc.*, 481 F.3d 724, 733 (9th Cir. 2007) ("One need not be a client or customer of a public accommodation to feel the sting of its discrimination."); *id.* ("Title III's broad general rule contains no express 'clients or customers' limitation . . . .") (quoting *PGA Tour*, 532 U.S. at 679).

In addition, in *Gniewkowski v. Lettuce Entertain You Enterprises, Inc.*, 251 F. Supp. 3d 908 (W.D. Pa. 2017), the federal district court rejected in a published opinion a similar argument asserted by a defendant bank predicated on the plaintiff not being an account holder of the bank by pointing out the bank's website enables a person without an account to "learn what services [the bank] has to offer potential customers." *Id.* at 918.  The same is certainly true here as Defendant cannot reasonably dispute that Plaintiff could certainly attempt to learn what services it provides to potential customers via its website and to obtain other information if it were equally accessible.

Not only is Defendant's membership argument unsupportable as a matter of law, and aside from the fact that Defendant has *no definitive knowledge at this stage that Plaintiff cannot qualify for its services*, it is factually illogical as well.   For example, despite a person's "membership" for

Defendant's services, it is beyond dispute that Defendant could be liable to a non-member patron for premises liability if that person is injured on Defendant's property (*e.g.*, a non-member spouse accompanies their member-spouse to one of Defendant's branch locations and is injured due to Defendant's negligence).  Similarly, if Plaintiff were to enter one of Defendant's locations to learn about its products and services, or even its qualifications for membership, and experienced an accessibility barrier in Defendant's parking lot, or at its service counters, or in its bathroom, Defendant could not and would not raise membership as a defense to the exact same cause of action alleged by Plaintiff here, only in the context of a violation of the physical accessibility standards promulgated by the DOJ.  28 C.F.R. § 36.406(b) ("The 1991 Standards and the 2010 Standards apply to fixed or built-in elements of buildings, structures, site improvements, and pedestrian routes or vehicular ways located on a site.").

This is because (1) Defendant's banking locations are places of public accommodation that will permit a person's entrance *despite membership*, and (2) because the services and privileges provided therefor (i.e., its parking lot, bathrooms, service counters, etc.) are "**goods, services, facilities, privileges, advantages, or accommodations *of* [its] place[s] of public accommodation**." 42 U.S.C. § 12182(a) (emphasis added).  Here too, Defendant's website is a service, privilege and advantage of its branch locations that is offered to *all* patrons or *potential* patrons on the internet, irrespective of credit-union membership, except that they are denying full and equal access only to *disabled* internet users.  That deprives such users of "full and equal enjoyment" as required by the ADA.  42 U.S.C. § 12182(a).

    **E.**    **Defendant's Telephone Service Affirmative Defense Is Not a Proper Basis on Which to Dismiss the ADA Claim.**

1.      **Defendant Seeks to Improperly Introduce Evidence That Is Beyond the Four Corners of the Complaint.**

Defendant argues that it is in compliance with the ADA by asserting that it has provided a telephone service accommodation instead of providing a fully compliant and accessible website for visually-impaired persons to use.  (Mot. at 7-8.)   In support, Defendant improperly relies upon purported evidence that is not contained within the four corners of Plaintiff's Complaint.  (Mot. at 8) (quoting alleged "banner" language on Defendant's website as of November 9, 2017).[15]   Defendant's introduction of outside evidence of its alleged "banner" statement on its website improper at this early stage.[16]

2.      *Access Now, Inc. v. Blue Apron, LLC* **Shows that Defendant's Affirmative Defense Is Premature to Resolve.**

Indeed, in *Access Now, Inc. v. Blue Apron, LLC*, No. 1:17-cv-00116-JL, 2017 WL 5186354 (D.N.H. Nov. 8, 2017), the district court rejected the dismissal of an ADA action premised upon the defendant's reliance upon a telephone service accommodation as premature because the facts establishing such affirmative defense were not clear on the face of the plaintiff's pleadings.  *Id.* at *9-*10.  The court explained:

"Whether [defendant] does, in fact, reasonably accommodate visually-impaired and blind users of its website through a telephone number that provides 'effective communication' is a

---

[15] Defendant's introduction of the alleged banner was dated as of November 9, 2017, *i.e.*, the date it filed its Motion.  (Mot. at 8.)  Defendant fails to include evidence as to whether such a banner was in place at the time Plaintiff *experienced* the accessibility barriers prior to filing the operative Complaint on September 29, 2017.  (Compl. ¶ 15) (noting that Plaintiff attempted to use abnbfcu.org several times "in recent months").  This is likely because the banner was *not* included at the time Plaintiff attempted to access Defendant's website.  Indeed, discovery in this action will surely confirm this to be the case.  Not surprisingly, Defendant fails to address precisely when such a banner was added to its website.

[16] Defendant's purported "banner" implicitly *admits* that its website is not ***currently*** accessible to those with disabilities by stating, "We are actively working to increase accessibility and usability of our website to everyone."  (Mot. at 8.)

24

fact-specific inquiry not ripe for resolution at the motion to dismiss stage.  The court declines

to dismiss the action on these grounds."

*Id.* at *10.

> **3.    Defendant's Telephone Service Defense Is Governed by the DOJ's Existing Regulation on Auxiliary Aids and Services, and Not the 2010 ANPRM.**

Defendant's "banner" argument is also flawed because it relies solely on the DOJ's ANPRM,

75 Fed. Reg. 43460 (July 26, 2010), which merely offers non-binding *guidance* about a potential

future regulation, and inexplicably ignores the DOJ's already-promulgated regulation in 28 C.F.R. §

36.303 regarding auxiliary aids and services, the latter of which is addressed below.

> **4.    Defendant Has Failed to Demonstrate that It Has Even Met the ANPRM's Purported Requirements.**

Even assuming that the ANPRM provides current guidance as to Defendant's purported

telephone service accommodation, Defendant has failed to even meet the ANPRM's proposed future

requirements.

The DOJ indicated in the ANPRM that inclusion of "an accessible alternative, such as a staffed

telephone line" "***may***" constitute compliance with the ADA – not that it definitely ***does*** constitute

compliance with the ADA.  75 Fed. Reg. at 43466.  The DOJ explicitly states, "The Department has

taken the position that covered entities with inaccessible Web sites ***may*** comply with the ADA's

requirement for access by providing an accessible alternative, such as a staffed telephone line, for

individuals to access the information, goods, and services of their Web site.  *See* Accessibility of State

and Local Government Web sites to People with Disabilities, available at http:// www.ada.gov/Web

sites2.htm.  In order for an entity to meet its legal obligation under the ADA, an entity's alternative

***must provide an equal degree of access in terms of hours of operations and range of information,***

25

*options, and services available*." *Id.* (emphasis added).   Noticeably absent from Defendant's introduction of evidence outside the four corners of Plaintiff's complaint is a certification that its offered telephone lines provide (1) an equal degree of access in terms of hours of operations (which should be 24 hours a day, 7 days a week because that is when its inaccessible website is offered); (2) that they provide the same range of information as the website; (3) that they have the same options as the website; or (4) that they have the same services available as those provided on the website (i.e. information dedicated to its accounts, loans, services and tools, advise and planning, "about us" information, rates and fees, the same services as online banking, etc.).  *Id.*; https://www.abnbfcu.org/ (last accessed 11/9/17).  Given that Defendant's banner fails to even meet the suggested guidelines of the DOJ, reliance thereon at this stage to warrant a dismissal of the Complaint is misplaced.

### 5.    Defendant Does Not, and Cannot, Establish that Its Banner and Telephone Numbers Are Proper Auxiliary Aids Under the ADA.

Defendant is apparently attempting to assert a defense based on its provision of an alleged auxiliary aid under the ADA.  (Mot. at 7-8.)  However, despite the fact that this is both a factual and legal defense inappropriate for a motion to dismiss, Defendant additionally fails to address precisely *how* its banner and service numbers meet that standard for auxiliary aids.

The ADA mandates that "A public accommodation shall take those steps that may be necessary to ensure that no individual with a disability is excluded, denied services, segregated or otherwise treated differently than other individuals because of the absence of auxiliary aids and services, unless the public accommodation can demonstrate that taking those steps would fundamentally alter the nature of the goods, services, facilities, privileges, advantages, or accommodations being offered or would result in an undue burden, i.e., significant difficulty or

expense." 28 C.F.R. § 36.303(a).[17] "In order to be effective, auxiliary aids and services must be provided in accessible formats, in a timely manner, and in such a way as to protect the privacy and independence of the individual with a disability." 28 C.F.R § 36.303(c)(1)(ii).

Here, in introducing its banner and service telephone numbers upon a motion to dismiss, Defendant fails to simultaneously include additional outside facts to establish that these alleged services or accommodations constitute lawful auxiliary aids. For example, Defendant offers no evidence that creating an accessible website would result in an undue burden. 2010 WL 1634981 (Apr. 22, 2010) ("Making websites accessible is neither difficult nor especially costly, and in most cases providing accessibility will not result in changes to the format or appearance of a site.")

Defendant also offers no evidence that the information provided on its website was in an accessible format. 28 C.F.R § 36.303(c)(1)(ii). Defendant similarly fails to confirm it was provided in a timely manner. *Id.* Indeed, Plaintiff explicitly disputes that the banner and telephone numbers were "timely" provided since they were added only *after* Plaintiff was unable to access Defendant's website. Similarly, Defendant wholly fails to establish *how* the banner and telephone numbers protect Plaintiff's "privacy and independence". 28 C.F.R § 36.303(c)(1)(ii). Defendant likely failed to provide these bases because it *cannot* establish that a telephone number, which requires Plaintiff to depend on an operator's assistance, preserves his independence. The same may be true of Plaintiff's privacy because if Plaintiff is forced to speak with Defendant's representative over the phone, he may be forced to disclose private and/or sensitive banking information that a non-disabled person who can simply use the website would not be forced to do.

---

[17] "The term 'auxiliary aids and services' **includes [] screen reader software**." 28 C.F.R. § 36.303(b)(2) (emphasis added). As alleged in the Complaint, Plaintiff attempted to access and use Defendant's website with the aid of a screen reader and was denied access despite this ADA approved auxiliary aid. (Compl. ¶ 3.)

Based on the foregoing, there is an obvious legal and factual dispute as to whether Defendant is "in full compliance with Title III of the ADA" as it contends.  (Mot. at 9.)  Defendant fails to provide either a dispositive legal or factual basis to prove this case is moot, and certainly fails to meet the Rule 12(b)(6) standard for dismissal.

### 6.      Plaintiff's ADA Claim Is Not Moot.

Defendant contends, "to the extent ABNB is in compliance [with the ADA], the case is moot and may be dismissed on that basis."  (Mot. at 4; *id.* at 9.)  Defendant's argument presupposes that the alleged banner offered on Defendant's website, along with the service telephone numbers, is sufficient to comply with the ADA.  *Id.* at 8.  This contention is erroneous for the reasons addressed above and also for the reasons addressed by *several* courts below.

For example, in *Brooke v. A-Ventures, Inc.*, No. 2:17-cv-2868-HRH, 2017 WL 5624941 (D. Ariz. Nov. 22, 2017), the district court held that, even after the defendant's alleged accessibility updates to its website, and notwithstanding the defendant's contention that "it has no intention of undoing the changes it has made to its website," *id.* at *3, the ADA claim relating to the accessibility of a commercial website was not moot because "all defendant has done is change its website and adopt a new internal policy, both of which could easily be changed in the future."  *Id.* at *4.  "A change to a website is akin to a change in policy, which courts have found are not sufficient to meet the stringent standard for proving a case has been mooted by a defendant's voluntary conduct if the policy 'could be easily abandoned or altered in the future.'"  *Id.* at *3 (citing *Bell v. City of Boise*, 709 F.3d 890, 901 (9th Cir. 2013)).  Unlike in *Brooke*, here, Defendant contends that it has even done far less to render Plaintiff ADA claim to be moot.  That is, instead of providing website accessibility updates and policy changes alleged by the defendant in *Brooke*, Defendant merely argues that it added a banner disclosure and phone numbers with no attempt to prove that such alternative provided "an

equal degree of access in terms of hours of operations and range of information, options, and services available."  75 Fed. Reg. at 43466.  As mentioned above, Defendant's own banner disclosure implicitly concedes that it is merely temporary while Defendant is "actively working to increase accessibility and usability of our website to everyone."  (Mot. at 8.)  A similar mootness argument has been additionally recently rejected by two different federal district courts in ADA website accessibility context in *Haynes*, 2017 WL 4863085, at *2 ("Defendant says that a pre-existing remediation plan it entered into as part of a confidential settlement agreement in another case provides Plaintiff with the relief he seeks, thus mooting this litigation.  The Court rejects this argument."), and in *Markett v. Five Guys Enterprises LLC*, No. 1:17-cv-00788-KBF, 2017 WL 5054568, at *5 (S.D.N.Y. July 21, 2017).  "'[W]hether the defendant's cessation of the offending conduct was motivated by a genuine change of heart or timed to anticipate suit' is relevant to the voluntary cessation analysis."  *Lozano v. C.A. Martinez Family Ltd. Partnership*, 129 F. Supp. 3d 967, 971 (S.D. Cal. 2015) (quoting *Sheely v. MRI Radiology Network P.A.*, 505 F.3d 1173, 1184 (11th Cir. 2007)); *Alumni Cruises, LLC v. Carnival Corp.*, 987 F. Supp. 2d 1290, 1302 (S.D. Fla. 2013) ("Voluntary cessation of challenged conduct . . . does not necessarily deprive the court of jurisdiction.").

Finally, "whether, in ceasing the conduct, the defendant has acknowledged liability" is a relevant factor to consider.  *Haynes*, 2017 WL 4863085, at *3 (quoting *Sheely*, 505 F.3d at 1184). Defendant makes no such acknowledgment of liability in its Motion.

## CONCLUSION

For the reasons set forth herein, the Court should deny Defendant's motion to dismiss.

Respectfully submitted,

/s/ Thomas E. Strelka
Thomas E. Strelka, VA Bar No. 75488
L. Leigh R. Strelka, VA Bar No. 73355
STRELKA LAW OFFICE, PC
119 Norfolk Avenue, SW,
Warehouse Row, Suite 330
Roanoke, Virginia 24011
Phone: (540) 283-0802
thomas@strelkalaw.com
leigh@strelkalaw.com
*Counsel for Plaintiff*

**Certificate of Service**

I hereby certify that on this 8th day of December 2017, I electronically filed the foregoing using the Court's CM/ECF filing system, which will then send a notification of electronic filing (NEF) to:

John M. Bredehoft, Esq., VA Bar No. 33602
Kaufman & Canoles, P.C.
150 West Main Street, Suite 2100
Norfolk, Virginia 23510

Randy C. Sparks, Esq., VA Bar No. 40723
Kaufman & Canoles, P.C.
Two James Center
1021 East Cary Street, Suite 1400
Richmond, Virginia 23219                                    /s/ Thomas E. Strelka