# ATTACHMENT 1

**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Norfolk Division**

| | |
|---|---|
| **KEITH CARROLL,** )<br>)<br>    **Plaintiff,** )<br>)<br>    v. )<br>)<br>**ABNB FEDERAL CREDIT UNION,** )<br>)<br>    **Defendant.** )<br>) | Case No. 2:17-cv-00521-MSD-LRL |

**BRIEF OF
NATIONAL ASSOCIATION OF FEDERALLY-INSURED CREDIT UNIONS (NAFCU)
AS *AMICUS CURIAE* SUPPORTING
DEFENDANT ABNB FEDERAL CREDIT UNION'S
MOTION TO DISMISS THE COMPLAINT**

Edward Lee Isler
Va. Bar No. 27985
ISLER DARE, P.C.
1945 Old Gallows Road, Suite 650
Vienna, Virginia 22182
(703) 748-2690
(703) 748-2695 (fax)
eisler@islerdare.com

Of Counsel
Carrie R. Hunt
Pamela Yu
NATIONAL ASSOCIATION OF
FEDERALLY-INSURED CREDIT UNIONS
3138 10th Street North
Arlington, VA  22201-2149
(703) 842-2234
chunt@nafcu.org

*Counsel for Amicus Curiae National Association of
Federally-Insured Credit Unions*

# TABLE OF CONTENTS

Page

I.  INTEREST OF AMICI CURIAE ...............................................................................................1

II. BACKGROUND ......................................................................................................................2

    A.    The Federal Credit Union System ..................................................................................2

    B.    Common Bond Requirements .........................................................................................3

III. SUMMARY OF ARGUMENT ................................................................................................4

IV. ARGUMENT ............................................................................................................................5

    A.    Plaintiff lacks standing because he has not demonstrated an injury-in-fact .............5

    B.    Plaintiff lacks standing because he fails to demonstrate an injury-in-fact fairly traceable to the challenged action ..........................................................................8

    C.    Plaintiff lacks standing because he shows no redressable injury that can be resolved by a judgment in his favor .................................................................................10

V. CONCLUSION ........................................................................................................................11

# TABLE OF AUTHORITIES

Page

**FEDERAL CASES**

*Clapper v. Amnesty Int'l USA*, 133 S. Ct. 1138, 1146 (2013) ........................................................5

*NCUA v. First National Bank*, 522 U.S. 479 (1998) .....................................................................4

*Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1547 (2016) ............................................................5, 6, 7

**STATUTES AND REGULATIONS**

Americans with Disabilities Act, Pub. L. 110-325, 42 U.S.C. 12101 (1990)......................... *passim*

Civil Rights Act, Pub. L. 88−352, 42 U.S.C. § 2000a–3 (1964) ....................................................9

Federal Credit Union Act, Pub. L. 73-467, 48 Stat. 1216 (1934)......................................... *passim*

28 C.F.R. § 36.504 ..........................................................................................................................9

**OTHER AUTHORITIES**

H.R. Rep. No. 73-2021 (1934)........................................................................................................3

S. Rep. No. 73-555 (1934)..............................................................................................................3

## I. INTEREST OF AMICI CURIAE

For decades, federally-insured credit unions have been an integral part of the nation's financial system. These nonprofit, cooperative, community-based financial organizations have enabled millions of Americans to save and invest more effectively by joining together with friends, family, and the broader community. Credit unions and the affordable services they offer are of particular importance to individuals in traditionally underserved communities, including lower-income and rural areas.

Amicus National Association of Federally-Insured Credit Unions ("NAFCU") is the only national trade association focusing exclusively on federal issues affecting the nation's federally-insured credit unions. It provides members with representation, information, education, and assistance to meet the constant challenges that cooperative financial institutions face in today's economic environment. NAFCU proudly represents many smaller credit unions with relatively limited operations, as well as many of the largest and most sophisticated credit unions in the nation. NAFCU represents 70 percent of total federal credit union assets and 43 percent of all federally-insured credit union assets. Defendant ABNB is a member of NAFCU.

This case arises from a recent spike in lawsuits and demand letters unfairly targeted at credit unions and other entities due to unclear website accessibility requirements under the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101 *et seq*. The Complaint is one of a litany of almost identical federal civil actions brought against numerous credit unions across Virginia and Maryland by the Plaintiff or Plaintiff's counsel within the past few months. NAFCU and its member credit unions recognize the importance of the ADA and fully support the ability of all Americans to have access to a broad array of financial services, including credit unions. However, the ADA and the Department of Justice's ("DOJ") regulations are currently silent on website accessibility standards. For numerous years, the DOJ has gathered information

on standards for website accessibility and has even issued an advance notice of proposed rulemaking intended to consider the feasibility of adopting formal accessibility standards. Unfortunately, however, these efforts have yet to result in clear regulatory standards for entities like credit unions. Plaintiff and his attorney seem to be attempting to capitalize on this regulatory vacuum with this action, along with wholesale issuances of demand letters and identical threats of litigation to numerous other credit unions across the Commonwealth. The consequence of this meritless and costly lawsuit, and others like it, is that real dollars are being taken out of the hands of credit union member-owners.

As not-for-profit, community-based cooperative financial institutions, credit unions are uniquely focused on the needs of their members, especially those with disabilities, and support the protections of the ADA. However, this action is part of a growing and troublesome trend of meritless lawsuits against well-meaning and community-focused credit unions, such as defendant ABNB, which could result in NAFCU's member credit unions being forced to cut valuable services due to unreasonable litigation risk—to the detriment of American consumers. Amicus NAFCU therefore has a substantial interest in the Court's resolution of this case.

## II.  BACKGROUND

### A.  The Federal Credit Union System

Credit unions are member-owned, not-for-profit cooperative financial institutions that serve defined fields of membership under the general oversight of volunteer boards of directors. Democratically owned and operated, credit unions are organized without capital stock and governed under a "one member, one vote" principle – each member has one vote, regardless of the amount on deposit. While banks are operated with the purpose of maximizing profits for their shareholders, the purpose of credit unions is to return those benefits to their member-owners.

The origins of America's federal credit union system date back to the Great Depression. The financial challenges of that period were compounded by the inability of millions of ordinary Americans to obtain the credit they needed to start businesses, purchase homes, or invest in their communities. *See* S. Rep. No. 73-555, at 3 (1934) (detailing the need to "bring normal-credit resources on a cooperative basis to the masses of the people whose buying power is now so often dissipated in high-rate interest charges"); *see also* H.R. Rep. No. 73-2021, at 1–2 (1934). Responding to these concerns, in 1934, Congress passed and President Franklin D. Roosevelt signed into law the Federal Credit Union Act (FCUA). The FCUA authorized the creation of federally chartered credit unions in each State "for the purpose of promoting thrift among [their] members and creating a source of credit for provident or productive purposes." 12 U.S.C. § 1752(1); *see also* Pub. L. No. 73-467, ch. 750, 48 Stat. 1216, 1216 (1934) (preamble). Because credit unions would be member-owned and operated democratically (usually by a volunteer board of directors), they were exempted from federal taxes and many state taxes.

B. **Federal Credit Union Common Bond Requirements**

The FCUA requires that members of an individual credit union share a "common bond." *See* 12 U.S.C. § 1759. Credit union membership is limited to groups, each defined in the credit union's charter, who share a common bond of occupation or association, or are located within a well-defined neighborhood, community, or rural district. *See* 12 U.S.C. § 1759(b). Federal credit unions may only serve members sharing a common bond; they are not permitted under federal law to provide financial services to the greater public. *See* 12 U.S.C. § 1759(a) ("Federal credit union membership shall consist of the incorporators and such other persons and incorporated and unincorporated organizations, to the extent permitted by rules and regulations prescribed by the Board, as may be elected to membership . . . "). The FCUA outlines three charter types based on three different types of common bonds.

3

The first charter type allows credit unions to be formed based on a single group sharing an occupational or associational bond. *Id.* at § 1759(b)(1). For example, members of such a credit union might include the employees and students of a particular university, or all of the nurses working in a given area.

In the second charter type, credit union membership may be based on a "multiple common bond," in which a single credit union serves multiple distinct groups.[1] *Id.* at § 1759(b)(2).

The third category of credit union charter is the community common bond. Community credit unions offer their services to "[p]erson[s] or organizations within a well-defined local community, neighborhood, or rural district." *Id.* at § 1759(b)(3).

These common bond requirements are a fundamental credit union concept that has continued to endure from the Depression era until today.

### III.  SUMMARY OF ARGUMENT

Amicus NAFCU agrees with ABNB's arguments in support of its motion to dismiss. ABNB is correct that the Complaint fails to state a claim upon which relief may be granted, and should be dismissed with prejudice because: (1) ABNB is fully in compliance with the requirements of Title III of the ADA, even assuming they apply to ABNB's website; (2) Title III is inapplicable to ABNB's website; and (3) even if Title III did apply to ABNB's website, and even if the site were non-compliant, Plaintiff lacks standing to raise the issue.

---

[1] In 1998, with the passage of the Credit Union Membership Access Act, Congress legislatively overruled the Supreme Court's decision in *NCUA v. First National Bank*, 522 U.S. 479 (1998), and ratified NCUA's longstanding policy of permitting federally chartered credit unions to obtain a multiple common-bond charter so long as members of each group within the charter share their own common bond.

4

Amicus NAFCU writes separately, however, to draw the Court's attention to additional evidence supporting ABNB's argument that Plaintiff does not have legal standing in this case.

## IV.  ARGUMENT

A.  **Plaintiff Lacks Standing Because He Has Not Demonstrated An Injury-In-Fact**

Plaintiff lacks standing in this case because he has not demonstrated that he has suffered an injury-in-fact that is concrete, particularized, actual, or imminent.  "Article III of the Constitution limits federal courts' jurisdiction to certain 'Cases' and 'Controversies.'" *Clapper v. Amnesty Int'l USA*, 133 S. Ct. 1138, 1146 (2013). "One element of the case-or-controversy requirement is that plaintiffs must establish that they have standing to sue." *Id*. "To establish Article III standing, an injury must be concrete, particularized, and actual or imminent; fairly traceable to the challenged action; and redressable by a favorable ruling." *Id*. at 1147. The Supreme Court has "repeatedly reiterated that 'threatened injury must be certainly impending to constitute injury in fact,' and that '[a]llegations of possible future injury' are not sufficient." *Id*.

Moreover, "[t]he party invoking jurisdiction bears the burden of establishing [the] elements [to show standing]." *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1547 (2016).  An "[i]njury in fact is a constitutional requirement, and '[i]t is settled that Congress cannot erase Article III's standing requirements by statutorily granting the right to sue to a plaintiff who would not otherwise have standing." *Id*. at 1547–48.  Thus, a plaintiff does not "automatically satisf[y] the injury-in-fact requirement whenever a statute grants a person a statutory right and purports to authorize that person to sue to vindicate that right." *Id.* at 1549.  Rather, "Article III standing requires a concrete injury even in the context of a statutory violation." *Id.*

Thus, the U.S. Supreme Court has made it clear that an alleged violation of a statute, "divorced from any concrete harm," is not sufficient to allege an injury-in-fact sufficient to meet

Article III standing requirements. *Id.* at 1549. Plaintiff has no standing to sue unless he meets his burden of demonstrating a concrete injury, even in the context of an alleged statutory violation of the ADA. In this case, Plaintiff cannot make a showing of concrete injury because he has not alleged that he is a member of ABNB or that he is even within the credit union's limited field of membership. Without showing that he was actually harmed by being denied access to ABNB's goods and services Plaintiff has no standing.

Under the FCUA, "the membership of any Federal credit union shall be limited to the membership described in one of the following categories": single-common bond credit union, multiple common-bond credit union, and community credit union. *See* 12 U.S.C. § 1759(b). ABNB is a federally-chartered community credit union, with a field of membership comprising those who live, work, or worship in South Hampton Roads and parts of North Carolina. Thus, the financial goods and services offered by ABNB are restricted to those who qualify for membership as a "[person] within [that] well-defined local community, neighborhood, or rural district." *See* 12 U.S.C. § 1759(b)(3). Individuals who fall within ABNB's field of membership are eligible to join the credit union but they must complete additional steps to become members. Membership in federal credit union requires an approved membership application and payment and maintenance of at least a par value share, as well as any applicable entrance fee. *See* 12 U.S.C. § 1759(a). Only after these conditions are met can an individual receive financial services from ABNB as a member of the credit union.

According to the Civil Cover Sheet filed with the Complaint, ECF 1-1 at 1 of 2, Plaintiff alleges he lives in the County of Fairfax, more than 100 miles from South Hampton Roads and even farther from North Carolina. Plaintiff has not alleged he lives, works, or worships in South Hampton Roads, such that he is even eligible for membership in ABNB. Further, even if he

6

were eligible for membership, Plaintiff has failed to show that he has met the application and par value requirements necessary to become a member of the credit union. Without meeting these eligibility and membership requirements, Plaintiff has not shown he is permitted to obtain financial goods and services from ABNB. In fact, given that Plaintiff has apparently filed similar cases in multiple jurisdictions across the Commonwealth, including Alexandria, Newport News, and Richmond Divisions of the Eastern District of Virginia, as well as in the Western District of Virginia, it is unlikely that Plaintiff can meet this burden as it would require him to live, work, or worship in South Hampton Roads in addition to numerous other well-defined communities, neighborhoods, and rural districts, or otherwise demonstrate the requisite common bond necessary for credit union membership in each of those credit unions.

Without a showing that Plaintiff is a member of ABNB, Plaintiff cannot meet even the first element required to establish standing in this court: that the injury must be concrete, particularized, and actual or imminent. Simply put, without membership, there is no concrete harm. Under *Spokeo*, Plaintiff's mere allegation of a violation of the ADA is insufficient; Article III requires such a violation to have caused him real, actual harm. Plaintiff has failed to show that he is a member entitled to access ABNB's website in order to obtain goods and services from the credit union. Irrespective of the accessibility of ABNB's website, absent a showing of membership, Plaintiff is not permitted to utilize ABNB's web services to obtain financial services in the first place and has suffered no concrete injury as a result of purportedly being denied equal access to ABNB's website. Even assuming ABNB's website was inaccessible to the visually-impaired Plaintiff has suffered no concrete injury since he is not permitted to receive services through that website in any case.

Moreover, Plaintiff has not shown, and likely cannot show, any imminent injury without demonstrating he qualifies for membership in the credit union by currently living, working, or worshipping within the credit union's geographic membership field. While it is theoretically possible that Plaintiff could move into (or begin working in or worshipping in) ABNB's membership field at some point in the future, take steps to become a member, and then suffer some allege concrete harm, as the Supreme Court has held, mere allegations of possible future injury are not sufficient to establish standing in this court. In light of the foregoing, the Court should dismiss Plaintiff's Complaint.

B.  **Plaintiff Lacks Standing Because He Fails To Demonstrate An Injury-In-Fact Fairly Traceable To The Challenged Action**

Plaintiff also lacks standing because he has not demonstrated that he has suffered an injury-in-fact that is fairly traceable to being denied equal access to ABNB's website. Again, Plaintiff has failed to show concrete harm. But even assuming Plaintiff has suffered real harm, such alleged injury could not be fairly traceable to the defendant's actions. Since Plaintiff has not shown that he is a member of ABNB, or that he is even eligible to become one, Plaintiff would not be permitted to access ABNB's goods and services through its website, accessible or not, in any case as a nonmember. The FCUA expressly limits "the membership of any Federal credit union" to those persons sharing a "common bond." *See* 12 U.S.C. §1759(b). In other words, ABNB's goods and services are limited to its members by operation of federal law. Thus, any denial of equal access to ABNB's online financial goods and services is due to Plaintiff's status as a nonmember, rather than to his purported inability to the access the website due to his visual impairment. Without alleging a threshold basis to obtain member goods and services from ABNB's website in the first place, Plaintiff has failed to show any injury-in-fact is fairly traceable to the defendant's website accessibility.

8

Indeed, Plaintiff's claims are even weaker than the claims of the plaintiffs in *Trapp v. SunTrust Bank*, 699 F. Appx. 144 (4th Cir. 2017). In that case, the husband and wife plaintiffs were denied a loan by the defendant SunTrust Bank, and claimed a violation of the Equal Credit Opportunity Act (ECOA). The district court dismissed the case on summary judgment, and the Fourth Circuit affirmed the dismissal. Citing *Spokeo* and *Dreher v. Experian Info. Solutions, Inc.*, 856 F.3d 337, 343 (4th Cir. 2017), the Fourth Circuit reiterated:

> [A] plaintiff cannot "allege a bare procedural violation, divorced from any concrete harm, and satisfy the injury-in-fact requirement of Article III." . . . "[A] plaintiff suffers a concrete informational injury where he is denied access to information required to be disclosed by statute, *and* he suffers, by being denied access to that information, the type of harm *Congress sought to prevent* by requiring disclosure."

*Trapp*, 699 F. Appx. at 145 (emphasis in original) (*quoting Dreher*, 856 F.3d at 345-46). The Court of Appeals further affirmed the district's court's dismissal on the grounds that the Trapps lacked standing because the reason they had pursued the loan (the purchase of a boat) was not frustrated by SunTrust's denial of the loan.

> Furthermore, the Trapps were able to purchase with cash the boat they were attempting to finance, as they originally intended to do before applying for a loan, thus further demonstrating that they suffered no real world harm. Thus, accepting the Trapps' contention that SunTrust violated the ECOA, we conclude that the Trapps' claim amounts to an allegation of a bare procedural violation of the ECOA in which they suffered no concrete injury.

*Trapp*, 699 F. Appx. at 145-46.

Here, Plaintiff's entire claim of damages is encompassed in two paragraphs of the complaint:

> If abnbfcu.org were accessible, Plaintiff could independently and privately investigate ABNBFCU's services, privileges, advantages, and accommodations and amenities, and find the location to visit via ABNBFCU's website as sighted individuals can and do.

9

> Despite several attempts to use abnbfcu.org in recent months, the numerous access barriers contained on ABNBFCU's website have denied Plaintiff's full and equal access, and deterred Plaintiff on a regular basis from accessing ABNBFCU's website. Similarly, based on the numerous access barriers contained on abnbfcu.org, Plaintiff has been deterred from visiting ABNBFCU's physical locations that Plaintiff may have located by using abnbfcu.org.

ECF 1 (Complaint at ¶¶ 14-15). In essence, Plaintiff is claiming that he (1) could not find out what services the credit union was offering; and (2) could not visit the credit union's physical locations. In neither instance has Plaintiff alleged anything that could be considered a "real world harm." For example, he has not alleged that he was trying to secure a mortgage and that because he could not find out what mortgage options were available at the credit union, he was unable to purchase a house. The absence of such an allegation in the Complaint reflects the nonexistence of any real world injury and thus also the complete lack of any injury-in-fact that might be fairly traceable to supposed accessibility issues with the ABNB FCU website.

C.  **Plaintiff Lacks Standing Because He Shows No Redressable Injury That Can Be Resolved By A Judgment In His Favor**

The Court should grant ABNB's Motion to Dismiss because Plaintiff has not demonstrated that the Court's favorable judgment in this matter could redress his injury.

The ADA and its regulations permit the DOJ to assess civil penalties for ADA violations, but do not authorize statutory penalties for private party plaintiffs. *See* 42 U.S.C. § 12188*;* 42 U.S.C. § 2000a-3; 28 C.F.R. § 36.504. While the Court could provide injunctive relief by directing ABNB to meet website accessibility standards[2] as a result of this action, such a judgment in Plaintiff's favor would not effectively redress his purported injury. As discussed, Plaintiff has failed to allege that he is a member of the credit union entitled to goods and services accessible through ABNB's website. Thus, even if the Court directs ABNB to improve its

---

[2] We reiterate, however, that the ADA and the DOJ's regulations are currently silent on website accessibility standards.

website accessibility, Plaintiff is still a nonmember who is unable, under federal law, to utilize ABNB's services through that website.

## V.  CONCLUSION

Federal credit unions are community-focused, member-owned, member-controlled, not-for-profit cooperative financial institutions chartered under federal law to allow groups of persons sharing a common bond to save, borrow, and obtain other financial services.  Despite the myriad benefits that credit unions, including ABNB, may offer to consumers, credit union services are limited to their members.  Plaintiff has failed to demonstrate he is a member of ABNB or even eligible to become a member of ABNB; thus, he is not permitted under federal law to obtain financial goods and services through ABNB's website irrespective of its accessibility to the visually impaired.  Plaintiff has no standing in this case.  Amicus NAFCU respectfully requests that the Court grant ABNB's Motion to Dismiss the Complaint.

Dated: December 20, 2017
Respectfully submitted,

/s/
Edward Lee Isler
Va. Bar No. 27985
ISLER DARE, P.C.
1945 Old Gallows Road, Suite 650
Vienna, Virginia 22182
(703) 748-2690/(703) 748-2695 (fax)
eisler@islerdare.com

Of Counsel
Carrie R. Hunt
Pamela Yu
NATIONAL ASSOCIATION OF
FEDERALLY-INSURED CREDIT UNIONS
3138 10th Street North
Arlington, VA  22201-2149
(703) 842-2234
chunt@nafcu.org

*Counsel for Amicus Curiae National Association of Federally-Insured Credit Unions*

## CERTIFICATE OF SERVICE

I hereby certify that on this 20th day of December 2017, I served a true and accurate copy of the foregoing by filing it electronically with the Clerk of the Court using the CM/ECF system, which will then send a notification of such filing (NEF) to the following:

> Thomas E. Strelka, Esq.
> L. Leigh R. Strelka, Esq.
> STRELKA LAW OFFICE, PC
> 119 Norfolk Avenue, SW,
> Warehouse Row, Suite 330
> Roanoke, Virginia 24011
> thomas@strelkalaw.com
> leigh@strelkalaw.com
>
> Scott J. Ferrell, Esq.
> Victoria Knowles, Esq.
> PACIFIC TRIAL ATTORNEYS
> 4100 Newport Place, Suite 800
> Newport Beach, CA 92660
> sferrell@pacifictrialattorneys.com
> vknowles@pacifictrialattorneys.com
>
> *Counsel for Plaintiff*

and

> John M. Bredehoft, Esq.
> Randy C. Sparks, Jr., Esq.
> KAUFMAN & CANOLES, P.C.
> 150 West Main Street, Suite 2100
> Norfolk, Virginia 23510
> E-mail: jmbredehoft@kaufcan.com
> E-mail: rcsparks@kaufcan.com
>
> *Counsel for Defendant*

>     /s/
> Edward Lee Isler, Va. Bar No. 27985
> ISLER DARE, P.C.
> 1945 Old Gallows Road, Suite 650
> Vienna, Virginia 22182
> (703) 748-2690/(703) 748-2695 (fax)
> eisler@islerdare.com
> *Counsel for Amicus Curiae National Association of Federally-Insured Credit Unions*

12