**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF VIRGINIA**
**NORFOLK DIVISION**

| | | |
|---|---|---|
| **KEITH CARROLL,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | **Case No: 2:17-cv-00521-MSD-LRL** |
| **v.** | ) | |
| | ) | |
| | ) | |
| **ABNB FEDERAL CREDIT UNION** | ) | |
| **("ABNBFCU")** | ) | |
| | ) | |
| **Defendant.** | ) | |

**PLAINTIFF'S BRIEF IN OPPOSITION TO MOTION OF NATIONAL ASSOCIATION OF**

**FEDERALLY-INSURED CREDIT UNIONS (NAFCU) FOR LEAVE TO FILE BRIEF AS**

**AMICUS CURIAE SUPPORTING DEFENDANT ABNB FEDERAL CREDIT UNION'S**

**<u>MOTION TO DISMISS THE COMPLAINT</u>**

## TABLE OF CONTENTS

INTRODUCTION ................................................................................................................1

ARGUMENT ......................................................................................................................2

A.   Plaintiff Has Constitutional Standing to Sue Defendant. .......................................2

1.   Legal Standard for Article III Standing ................................................................3

2.   The Fourth Circuit Recently Analyzed Standing to Sue in the Context of an ADA Claim,
Which Provides Important Guidance Here. ................................................................5

3.   Plaintiff's Dignitary Interest as a Disabled Person Is Protected by the ADA's Anti-
Discrimination Purpose and so an Invasion of that Interest Constitutes an Intangible Injury
Long Recognized by the Supreme Court. ....................................................................6

4.   The Complaint Here Sufficiently Alleges Both Personal Encounters with Defendant's
Inaccessible Website and also Deterrence Because of the Ongoing Nature of the Such
Inaccessibility. ..........................................................................................................8

5.   *Trapp v. SunTrust Bank* Is Distinguishable. ........................................................9

6.   NAFCU Ignores the Supreme Court's Decision in *Havens Realty Corp. v. Coleman.* ..........9

7.   Multiple Circuit Courts Have Recognized an ADA Litigant's Constitutional Standing to
Sue under Title III of the ADA as a "Tester". ..........................................................10

8.   Plaintiff's Number of Lawsuits Is Irrelevant to Plaintiff's Standing...................12

9.   *Haynes v. Interbond Corp. of America* Is Directly on Point. ...............................12

10.   "Membership" Does Not Determine Standing to Sue. ....................................14

i

11.     If the Complaint's Allegations Are Insufficient to Allege Standing to Sue, then the Court Should Grant Leave to Amend ................................................................................................ 16

12.     Even If the Court Dismisses the Action for Lack of Standing, NAFCU's Contention that Dismissal Should Be "With Prejudice" Is Wrong as a Matter of Law. ..................................... 16

CONCLUSION ............................................................................................................................ 17

# TABLE OF AUTHORITIES

**Page(s)**

**Federal Cases**

*Access Now, Inc., et al. v. Blue Apron, LLC*,
   No. 17-CV-116-JL, 2017 WL 5186354 (D.N.H. Nov. 8, 2017) ............................................. 9, 16

*Adams v. SHRI Dwarkesh Investments, LLC*,
   No. 6:15-cv-03261-MDH, 2015 WL 6755321 (W.D. Mo. Nov. 4, 2015) .................................. 11

*Baughman v. Walt Disney World Co.*,
   685 F.3d 1132 (9th Cir. 2012) ...................................................................................... 1, 2, 15

*Blue Cross Blue Shield of Massachusetts, Inc. v. BCS Ins. Co.*,
   671 F.3d 635 (7th Cir. 2011) ................................................................................................ 12

*Chapman v. Pier 1 Imports (U.S.) Inc.*,
   631 F.3d 939 (9th Cir. 2011) .............................................................................................. 7, 8

*Church v. City of Huntsville*,
   30 F.3d 1332 (11th Cir. 1994) .............................................................................................. 14

*City of Los Angeles v. Lyons*,
   461 U.S. 95 (1983) ............................................................................................................... 14

*Civil Rights Educ. and Enforcement Center v. Hospitality Props. Trust*,
   867 F.3d 1093 (9th Cir. 2017) ........................................................................................... 4, 10

*Clapper v. Amnesty Int'l USA*,
   568 U.S. 398, 133 S. Ct. 1138 (2013) ..................................................................................... 3

*Colorado Cross Disability Coalition v. Abercrombie & Fitch Co.*,
   765 F.3d 1205 (10th Cir. 2014) ............................................................................................. 11

*D'Lil v. Best Western Encina Lodge & Suites*,
   538 F.3d 1031 (9th Cir. 2008) ............................................................................................... 11

*DaimlerChrysler Corp. v. Cuno*,
   547 U.S. 332, 126 S. Ct. 1854 (2006) ...................................................................................... 3

*Daniels v. Arcade, L.P.*,
   477 Fed. Appx. 125 (4th Cir. 2012) ................................................................................ 6, 8, 10

*De La Rosa v. Lewis Foods of 42nd Street, LLC*,
   124 F. Supp. 3d 290 (S.D.N.Y. 2015) .................................................................................... 12

*Doran v. 7-Eleven, Inc.*,
    524 F.3d 1034 (9th Cir. 2008) ............................................................................ 4

*Friends of Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*,
    528 U.S. 167, 120 S. Ct. 693 (2000) .................................................................. 3

*Gniewkowski v. Lettuce Entertain You Enterprises, Inc.*,
    251 F. Supp. 3d 908 (W.D. Pa. 2017) ...................................................... 1, 12, 15

*Gordon v. Virtumundo, Inc.*,
    575 F.3d 1040 (9th Cir. 2009) (Gould, J., concurring) ...................................... 11

*Havens Realty Corp. v. Coleman*,
    455 U.S. 363, 102 S. Ct. 1114 (1982) ............................................................ 9, 10

*Haynes v. Interbond Corp. of America*,
    No. 17-CIV-61074, 2017 WL 4863085 (S.D. Fla. Oct. 16, 2017) ............ 12, 13, 14, 16

*Houston v. Marod Supermarkets, Inc.*,
    733 F.3d 1323 (11th Cir. 2013) ...................................................................... 11, 13

*in Matera v. Google Inc.*,
    No. 15-cv-04062-LHK, 2016 WL 5339806 (N.D. Cal. Sept. 23, 2016) ................ 7

*Interstate Petroleum Corp. v. Morgan*,
    249 F.3d 215 (4th Cir. 2001) (en banc) .............................................................. 16

*Leung v. XPO Logistics, Inc.*,
    164 F. Supp. 3d 1032 (N.D. Ill. 2015) ................................................................. 7

*Lujan v. Defenders of Wildlife*,
    504 U.S. 555, 112 S. Ct. 2130 (1992) .............................................................. 3, 4

*Molski v. Evergreen Dynasty Corp.*,
    500 F.3d 1047 (9th Cir. 2007) ........................................................................... 11

*Molski v. Evergreen Dynasty Corp.*,
    521 F.3d 1215 (9th Cir. 2008) (Berzon, J., dissenting from denial of rehearing en
    banc) .................................................................................................................. 11

*Molski v. M.J. Cable, Inc.*,
    481 F.3d 724 (9th Cir. 2007) ........................................................................ 14, 15

*Nanni v. Aberdeen Marketplace, Inc.*,
    No. 16-1638, 2017 WL 6521299 (4th Cir. Dec. 21, 2017) ................................. *passim*

*Native American Arts, Inc. v. Peter Stone Co., U.S.A., Inc.*,
  222 F. Supp. 3d 643 (N.D. Ill. 2016), *appeal docketed*, No. 16-4278 (7th Cir.
  Dec. 30, 2016) ........................................................................................................ 11, 12

*PGA Tour v. Martin*,
  532 U.S. 661, 121 S. Ct. 1879 (2001) ...................................................... 1, 7, 14, 15

*Pickern v. Holiday Quality Foods Inc.*,
  293 F.3d 1133 (9th Cir. 2002) ........................................................................................ 5

*Semtek Int'l Inc. v. Lockheed Martin Corp.*,
  531 U.S. 497, 121 S. Ct. 1021 (2001) .......................................................................... 16

*Shaver v. Independent Stave Co.*,
  350 F.3d 716 (8th Cir. 2003) ................................................................................. 2, 7, 9

*Southern Walk at Broadlands Homeowner's Ass'n, Inc. v. OpenBand at Broadlands,
  LLC*,
  713 F.3d 175 (4th Cir. 2013) ........................................................................................ 16

*Spokeo, Inc. v. Robins*,
  136 S. Ct. 1540 (2016) ...................................................................................... 2, 3, 6, 10

*Steel Co. v. Citizens for a Better Env't*,
  523 U.S. 83, 118 S. Ct. 1003 (1998) ............................................................................ 16

*Steger v. Franco, Inc.*,
  228 F.3d 889 (8th Cir. 2000) .......................................................................................... 8

*Summers v. Earth Island Inst.*,
  555 U.S. 488, 129 S. Ct. 1142 (2009) ............................................................................ 3

*Town of Chester v. Laroe Estates, Inc.*,
  137 S. Ct. 1645 (2017) .................................................................................................... 3

*Trafficante v. Metro. Life Ins. Co.*,
  409 U.S. 205, 93 S. Ct. 364 (1972) ................................................................................ 4

*Trapp v. SunTrust Bank*,
  699 Fed. Appx. 144 (4th Cir. 2017) ................................................................................ 9

*Wooden v. Bd. of Regents of Univ. Sys. of Ga.*,
  247 F.3d 1262 (11th Cir. 2001) .................................................................................... 13

*Young America Corp. v. Affiliated Computer Servs. (ACS), Inc.*,
  424 F.3d 840 (8th Cir. 2005) .......................................................................................... 4

**State Cases**

*Friddle v. Epstein*,
    16 Cal. App. 4th 1649, 21 Cal. Rptr. 2d 85 (1993) ........................................................................ 7

**Federal Statutes**

Equal Credit Opportunity Act (ECOA), 15 U.S.C. §§ 1691 to 1691f ................................................ 9

42 U.S.C. § 2000a-3(a) .................................................................................................................. 13

42 U.S.C. § 12101 *et seq* ........................................................................................................ *passim*

42 U.S.C. § 12182(a) ...................................................................................................... 5, 8, 10, 15

42 U.S.C. § 12182(b)(2)(A)(iv) ..................................................................................................... 13

42 U.S.C. § 12188(a)(1) ....................................................................................................... 5, 8, 11

42 U.S.C. §12188(a)—a ................................................................................................................ 13

**Federal Rules**

Fed. R. Civ. P. 41(b) ..................................................................................................................... 16

Fed. R. Civ. P. 12(b)(6) ................................................................................................................ 12

Comes now Plaintiff, Keith Carroll, by counsel, and hereby presents this Brief in Opposition to the National Association of Federally-Insured Credit Unions ("NAFCU") Motion for Leave to File Brief as Amicus Curiae supporting Defendant ABNB Federal Credit Union's ("ABNB") Motion to Dismiss the Complaint.

## INTRODUCTION

NAFCU uses overheated rhetoric to describe Plaintiff's action including the terms "baseless," "troublesome," and "unfair." NAFCU limits the scope of its proposed amicus brief, however, to addressing the question of whether Plaintiff lacks Article III constitutional standing to sue regarding his claim under Title III of the ADA.

Although NAFCU contends that its proposed amicus brief is not duplicative of the parties' briefs, a careful comparison with Defendant's briefs reveals that there is substantial overlap between NAFCU's proposed amicus brief and Defendant's briefs. For example, NAFCU repeats Defendant's argument that Plaintiff lacks standing to sue because he is not a member of Defendant's credit union, ignoring the fact that the Supreme Court of the United States has held well over a decade ago that Title III of the ADA has no "clients or customers" limitation. *PGA Tour v. Martin*, 532 U.S. 661, 679, 121 S. Ct. 1879 (2001). And, NAFCU, like Defendant, ignores that in *Gniewkowski v. Lettuce Entertain You Enterprises, Inc.*, 251 F. Supp. 3d 908 (W.D. Pa. 2017), the federal district court rejected in a published opinion a similar argument asserted by a defendant bank predicated on the plaintiff not being an account holder of the bank by pointing out the bank's website enables a person without an account to "learn what services [the bank] has to offer potential customers." *Id.* at 918. The holding in *Gniewkowski* should not come as a surprise. "The ADA guarantees the disabled more than mere access to public facilities; it guarantees them 'full and equal enjoyment.'" *Baughman v. Walt Disney World Co.*, 685 F.3d 1132, 1135 (9th Cir. 2012). "Public accommodations must start by

1

considering how their facilities are used by non-disabled guests and then take reasonable steps to provide disabled guests with a like experience." *Id.* Thus, Plaintiff should be able to enjoy the same experience on Defendant's publicly-accessible website as does a non-disabled visitor to such website.

To the extent that NAFCU seeks to differentiate itself from Defendant by relying upon *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540 (2016), such reliance is misplaced. *Spokeo*, if anything, supports Plaintiff's position, by reaffirming that intangible injuries are cognizable as "concrete injuries" for purposes of Article III standing to sue. It is beyond dispute that the discrimination encountered by Plaintiff affected his dignitary interest, which is precisely what Congress intended to protect in enacting the ADA. *Shaver v. Independent Stave Co.*, 350 F.3d 716, 724 (8th Cir. 2003) (stating that "[the] language [of the ADA] suggests that Congress was trying to protect a dignitary interest with the ADA").

The timing of NAFCU's proposed amicus brief is noteworthy, however, considering that the Fourth Circuit just recently issued an important published decision on Article III standing in the Title III ADA context and the propriety of "testers". *Nanni v. Aberdeen Marketplace, Inc.*, No. 16-1638, 2017 WL 6521299 (4th Cir. Dec. 21, 2017). Thus, at minimum, this Court should consider Plaintiff's analysis of *Nanni*, which is addressed below. Based on *Nanni*'s guidance, this Court should find that the Complaint sufficiently alleges Article III standing to sue.

## ARGUMENT

### A.    Plaintiff Has Constitutional Standing to Sue Defendant.

NAFCU contends that the Complaint lacks allegations showing an injury in fact sufficient for purposes of alleging Article III constitutional standing to sue. Not so.

### 1.      Legal Standard for Article III Standing

"Standing to sue is a doctrine rooted in the traditional understanding of a case or controversy." *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1547 (2016).  The law of Article III standing "require[s] plaintiffs to allege such a personal stake in the outcome of the controversy as to justify the exercise of the court's remedial powers on their behalf."  *Town of Chester v. Laroe Estates, Inc.*, 137 S. Ct. 1645, 1651 (2017) (alterations and internal quotation marks omitted). In doing so, the "standing doctrine serves to prevent the judicial process from being used to usurp the powers of the political branches," *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 408, 133 S. Ct. 1138 (2013), thereby ensuring that "the Federal Judiciary respects the proper—and properly limited—role of the courts in a democratic society," *DaimlerChrysler Corp. v. Cuno*, 547 U.S. 332, 341, 126 S. Ct. 1854 (2006) (internal quotation marks omitted).  The Supreme Court's cases establish that the "irreducible constitutional minimum" of standing consists of three elements.  *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561, 112 S. Ct. 2130 (1992).  The plaintiff must have "(1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision."  *Spokeo*, 136 S. Ct. at 1547.

When an injunction is sought, the moving party must also show a continuing threat of injury. *Friends of Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*, 528 U.S. 167, 180–81, 120 S. Ct. 693 (2000).  To merit injunctive relief, a plaintiff must demonstrate that he suffers the threat of an " 'injury in fact' that is concrete and particularized; the threat must be actual and imminent, not conjectural or hypothetical; it must be fairly traceable to the challenged action of the defendant; and it must be likely that a favorable judicial decision will prevent or redress the injury."  *Summers v. Earth Island Inst.*, 555 U.S. 488, 493, 129 S. Ct. 1142 (2009) (citation omitted).

3

"At the pleading stage, general factual allegations of injury resulting from the defendant's conduct may suffice, for on a motion to dismiss we 'presum[e] that general allegations embrace those specific facts that are necessary to support the claim.'" *Lujan*, 504 U.S. at 561; *Young America Corp. v. Affiliated Computer Servs. (ACS), Inc.*, 424 F.3d 840, 843 (8th Cir. 2005) ("In assessing whether the plaintiff has alleged a sufficiently particularized and concrete injury, the court must accept all factual allegations in the complaint as true and draw all inferences in the plaintiff's favor.").

"The Supreme Court has instructed [courts] to take a broad view of constitutional standing in civil rights cases, especially where, as under the ADA, private enforcement suits 'are the primary method of obtaining compliance with the Act.'" *Doran v. 7-Eleven, Inc.*, 524 F.3d 1034, 1039-40 (9th Cir. 2008) (citing *Trafficante v. Metro. Life Ins. Co.*, 409 U.S. 205, 209, 93 S. Ct. 364 (1972)).

In assessing a question of standing to sue, [courts] are not concerned with the merits of the plaintiff's claim." *Nanni v. Aberdeen Marketplace, Inc.*, No. 16-1638, slip op. at 13, 2017 WL 6521299 (4th Cir. Dec. 21, 2017).

Federal courts including the Fourth Circuit have recognized that a personal encounter with an accessibility barrier pleads a past injury that is "concrete, particularized, and actual." *Nanni v. Aberdeen Marketplace, Inc.*, No. 16-1638, slip op. at 15, 2017 WL 6521299 (4th Cir. Dec. 21, 2017) ("By alleging that [plaintiff] . . . personally encountered . . . barriers to access, the Complaint pleads past injuries that are concrete, particularized, and actual.").

On the other hand, a "personal encounter" with an accessibility barrier is not a requirement to establish Article III standing to sue. *Civil Rights Educ. and Enforcement Center v. Hospitality Props. Trust*, 867 F.3d 1093, 1100 (9th Cir. 2017) ("we reject [defendant's] invitation to create a bright-line predicate of a 'personal encounter' with a barrier to access as a requirement for standing under ADA Title III."). "[W]hen a plaintiff who is disabled within the meaning of the ADA has actual knowledge

4

of illegal barriers at a public accommodation to which he or she desires access, that plaintiff need not engage in the 'futile gesture' of attempting to gain access in order to show actual injury . . . ." *Pickern v. Holiday Quality Foods Inc.*, 293 F.3d 1133, 1135 (9th Cir. 2002) (quoting 42 U.S.C. § 12188(a)(1)).[1] "So long as the discriminatory conditions continue, and so long as a plaintiff is aware of them and remains deterred, the injury under the ADA continues." *Id.* at 1137; *id.* at 1138 ("We hold that a disabled individual who is currently deterred from patronizing a public accommodation due to a defendant's failure to comply with the ADA has suffered 'actual injury.'  Similarly, a plaintiff who is threatened with harm in the future because of existing or imminently threatened non-compliance with the ADA suffers 'imminent injury.'").

### 2.     The Fourth Circuit Recently Analyzed Standing to Sue in the Context of an ADA Claim, Which Provides Important Guidance Here.

The Fourth Circuit's recent published decision in *Nanni v. Aberdeen Marketplace, Inc.*, No. 16-1638, 2017 WL 6521299 (4th Cir. Dec. 21, 2017), which reversed a district court's dismissal of an ADA action for lack of standing, provides important guidance here regarding standing to sue.  In particular, the Fourth Circuit held:

> "Architectural barriers, such as those identified here, result in exclusion, segregation, and other differential treatment of persons with disabilities – precisely the types of systemic discrimination the ADA seeks to erase.  *See* 42 U.S.C. § 12182(a).  By alleging that [plaintiff] personally encountered architectural barriers, the Complaint pleads past injuries that are

---

[1] 42 U.S.C. § 12188(a)(1), governing enforcement of Title III claims, provides that "[n]othing in this section shall require a person with a disability to engage in a futile gesture if such person has actual notice that a person or organization covered by this subchapter does not intend to comply with its provisions."

concrete, particularized, and actual.  Indeed, there is nothing conjectural or hypothetical about

the injuries [plaintiff] suffered . . . ."

*Nanni*, slip op. at 15.  In addition, in addressing the additional requirements for standing to seek an

injunction, the Fourth Circuit held that the complaint sufficiently alleged a likelihood that the plaintiff

will again suffer injuries based upon the "*Daniels* principle" within *Daniels v. Arcade, L.P.*, 477 Fed.

Appx. 125 (4th Cir. 2012), *i.e.*, "that when an ADA plaintiff has alleged a past injury at a particular

location, his plausible intentions to thereafter return to that location are sufficient to demonstrate the

likelihood of future injury."  *Nanni*, slip op. at 16.  The Fourth Circuit characterized the "*Daniels*

principle" as "entirely consistent with the decisions of our fellow courts of appeals."  *Id.*  "Put simply,

we are satisfied with the Daniels decision properly described and applied the pleading obligations for

standing with respect to *Lujan*'s injury-in-fact element.  We therefore adopt the *Daniels* principle and

apply it in disposing of this appeal."  *Nanni*, slip op. at 17.

> **3.**      **Plaintiff's Dignitary Interest as a Disabled Person Is Protected by the**
>
> **ADA's Anti-Discrimination Purpose and so an Invasion of that Interest**
>
> **Constitutes an Intangible Injury Long Recognized by the Supreme**
>
> **Court.**

NAFCU relies heavily upon *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540 (2016), as support for its

contention that Plaintiff lacks Article III standing to sue Defendant.  NAFCU's reliance on *Spokeo* is

misplaced.

In *Spokeo*, the High Court, in reiterating longstanding principles of Article III standing,

expressly noted that it had long recognized intangible injuries as actionable.  *Id.* at 1549.

Needless to say, Plaintiff, here, is alleging an intangible injury caused by the discrimination

that he encountered while attempting to use Defendant's inaccessible website, which has also deterred

him from further usage while it continues to remain inaccessible.  (Compl. ¶¶ 14, 15.)  NAFCU's assumption that Plaintiff must show more than his intangible injury to his dignitary interest in order to show a "concrete" injury for purposes of Article III standing is mistaken.

"The concept of 'discrimination' under the ADA does not extend only to obviously exclusionary conduct . . . . Rather, the ADA proscribes more subtle forms of discrimination . . . that interfere with disabled individuals' 'full and equal enjoyment' of places of public accommodation." *Chapman v. Pier 1 Imports (U.S.) Inc.*, 631 F.3d 939, 945 (9th Cir. 2011).  "[The ADA's] passage was premised on Congress's finding that discrimination against the disabled is 'most often the product, not of invidious animus, but rather of thoughtlessness and indifference,' of 'benign neglect,' and of 'apathetic attitudes rather than affirmative animus.'"  *Id.* at 944-45.  "[T]he Act has been described as 'a milestone on the path to a more decent, tolerant, progressive society . . . .'"  *PGA Tour v. Martin*, 532 U.S. 661, 675, 121 S. Ct. 1879 (2001).

"Injuries to emotional and dignitary interests are among those that count as injuries in fact." *Leung v. XPO Logistics, Inc.*, 164 F. Supp. 3d 1032, 1038 (N.D. Ill. 2015); *see also* Wright and Miller, Fed. Prac. & Proc. § 3531.4 (3d Ed. 2015) ("Other more-or-less abstract interests that support standing include individual reputation, privacy, and dignity.").  "Any invasion of privacy involves an affront to human dignity."  *Friddle v. Epstein*, 16 Cal. App. 4th 1649, 1660-61, 21 Cal. Rptr. 2d 85 (1993), *quoted in Matera v. Google Inc.*, No. 15-cv-04062-LHK, 2016 WL 5339806, at *13 (N.D. Cal. Sept. 23, 2016).  So does discrimination prohibited by a federal statute like the ADA.  "[T]he mere fact of discrimination offends the dignitary interest that the statute[ is] designed to protect, regardless of whether the discrimination worked any direct economic harm to the plaintiffs."  *Shaver v. Independent Stave Co.*, 350 F.3d 716, 724 (8th Cir. 2003) (stating that "[the] language [of the ADA] suggests that Congress was trying to protect a dignitary interest with the ADA").

**4.     The Complaint Here Sufficiently Alleges Both Personal Encounters with Defendant's Inaccessible Website and also Deterrence Because of the Ongoing Nature of the Such Inaccessibility.**

Plaintiff's Complaint here alleges both personal encounters with Defendant's website accessibility barriers and deterrence making additional visits to such website a "futile gesture" under 42 U.S.C. § 12188(a)(1).  In particular, the Complaint alleges that Plaintiff has made "several attempts to use abnbfcu.org in recent months," (Compl. ¶ 15), encountered numerous access barriers on such website that has denied him full and equal access, and deterred him from accessing such website.  *Id.* Plaintiff also alleges that "[i]f abnbfcu.org were accessible, Plaintiff could independently and privately investigate ABNBFCU's services, privileges, advantages, and accommodations and amenities, and find the location to visit ABNBFCU's website as sighted individuals can and do."  *Id.* ¶ 14.  Thus, Plaintiff has sufficiently alleged a concrete and particularized, real and immediate injury that is not conjectural or hypothetical.  *Nanni*, slip op. at 15 ("Architectural barriers, such as those identified here, result in exclusion, segregation, and other differential treatment of persons with disabilities – precisely the types of systemic discrimination the ADA seeks to erase.  *See* 42 U.S.C. § 12182(a).  By alleging that [plaintiff] personally encountered architectural barriers, the Complaint pleads past injuries that are concrete, particularized, and actual.  Indeed, there is nothing conjectural or hypothetical about the injuries [plaintiff] suffered . . . ."); *see also Steger v. Franco, Inc.*, 228 F.3d 889, 891-93 (8th Cir. 2000) (finding injury when blind plaintiff was unable to locate and use restroom that did not have ADA-required braille or raised-lettered sign).

Similarly, the Complaint here sufficiently alleges a likelihood that Plaintiff will again suffer such injury in the future under the "*Daniels* principle."  *Nanni*, slip op. at 16-17; *Chapman v. Pier 1 Imports (U.S.) Inc.*, 631 F.3d 939, 948 (9th Cir. 2011) ("past wrongs are evidence bearing on whether

8

there is a real and immediate threat of repeated injury"). Thus, Plaintiff surely has standing to seek an injunction requiring ABNB to render its website accessible to him. *Access Now, Inc., et al. v. Blue Apron, LLC,* No. 17-CV-116-JL, 2017 WL 5186354, at \*11 (D.N.H. Nov. 8, 2017) ("[T]he individual plaintiffs have standing to seek an injunction requiring [defendant] to render its website accessible to them.") (emphasis in original).

### 5. *Trapp v. SunTrust Bank* Is Distinguishable.

NAFCU's reliance on the unpublished and non-binding decision in *Trapp v. SunTrust Bank*, 699 Fed. Appx. 144 (4th Cir. 2017), is misplaced as that decision is readily distinguishable. In *Trapp*, the plaintiffs alleged violations of the Equal Credit Opportunity Act (ECOA), 15 U.S.C. §§ 1691 to 1691f. As noted in the portion of *Trapp* cited by NAFCU, the alleged injury at issue therein was an "informational injury" as opposed to a dignitary injury, the latter of which is at issue in an alleged violation of an anti-discrimination statute like the ADA. *Shaver v. Independent Stave Co.*, 350 F.3d 716, 724 (8th Cir. 2003) (stating that "[the] language [of the ADA] suggests that Congress was trying to protect a dignitary interest with the ADA"). Thus, *Trapp* provides absolutely no guidance here. It's akin to comparing apples to oranges. After all, characterizing the ***substantive*** injury suffered by Plaintiff as a result of Defendant's discrimination against him as a "bare procedural violation" makes no sense. That NAFCU would make such a fundamental error in addressing such a basic principle of constitutional standing raises serious questions about its legal analysis.

### 6. NAFCU Ignores the Supreme Court's Decision in *Havens Realty Corp. v. Coleman.*

NAFCU conveniently ignores that the Supreme Court of the United States has specifically endorsed plaintiff "testers" especially in the discrimination context. *See Havens Realty Corp. v. Coleman*, 455 U.S. 363, 374, 102 S. Ct. 1114 (1982); *id.* at 373 ("As we have previously recognized,

'[t]he actual or threatened injury required by Art. III may exist solely by virtue of 'statutes creating legal rights, the invasion of which creates standing . . . .' ' ").  "That the tester may have approached the real estate agent fully expecting that he would receive false information, and without any intention of buying or renting a home, does not negate the simple fact of injury within the meaning of [the statute prohibiting unlawful misrepresentations]."  *Havens*, 455 U.S. at 374.

*Havens* has not been overruled by the Supreme Court.  Indeed, Justice Thomas's concurring opinion expressly cited *Havens*.  *See Spokeo*, 136 S. Ct. at 1553 (Thomas, J., concurring).

### 7.    Multiple Circuit Courts Have Recognized an ADA Litigant's Constitutional Standing to Sue under Title III of the ADA as a "Tester".

The NAFCU's motion ignores the fact that multiple federal circuit courts, ***including the Fourth Circuit***, have recognized that serial ADA litigation is not improper and that disabled ADA plaintiffs can sue under Title III of the ADA as a "tester".  *See, e.g.*, *Nanni v. Aberdeen Marketplace, Inc.*, No. 16-1638, slip op. at 19, 2017 WL 6521299 (4th Cir. Dec. 21, 2017) ("neither [plaintiff's] status as an 'ADA tester' nor his litigation history strips him of standing to sue [defendant]"); *id.* at 20 ("At bottom, we reject the proposition that [plaintiff's] motivations in pursuing his ADA claim against [defendant] deprive him of standing to sue in these proceedings.") (citing *Daniels v. Arcade, L.P.*, 477 Fed. Appx. 125, 130 (4th Cir. 2012) ("[W]e conclude that [plaintiff's] litigation history is not relevant to this case.")); *Civil Rights Educ. and Enforcement Center v. Hospitality Props. Trust*, 867 F.3d 1093, 1096 (9th Cir. 2017) (holding that "a plaintiff has constitutional standing" even if "her only motivation for visiting a facility is to test it for ADA compliance"); *id.* at 1102 ("We . . . conclude that motivation is irrelevant to the question of standing under Title III of the ADA.  The Named Plaintiffs' status as ADA testers thus does not deprive them of standing."); *id.* at 1101-02 (noting that 42 U.S.C. § 12182(a) states that "*[n]o individual* shall be discriminated against on the basis of

disability" and noting that Title III provides remedies for "any person" subjected to illegal disability discrimination as stated in 42 U.S.C. § 12188(a)(1)) (emphasis in original); *Colorado Cross Disability Coalition v. Abercrombie & Fitch Co.*, 765 F.3d 1205, 1211 (10th Cir. 2014) ("anyone who has suffered an invasion of the legal interest protected by Title III may have standing, regardless of his or her motivation in encountering the invasion"); *id.* at 1216 ("a plaintiff's status as tester is irrelevant in determining whether she has suffered an injury in fact under Title III of the ADA."); *Houston v. Marod Supermarkets, Inc.*, 733 F.3d 1323, 1330–40 (11th Cir. 2013) (finding the plaintiff's tester motive behind his visit to supermarket did not foreclose standing for his claim under Title III of the ADA); *id.* at 1332 ("The substantive right conferred by [the ADA] statute is to be free from disability discrimination in the enjoyment of the facility, regardless of [plaintiff's] motive for visiting the facility."); *id.* ("Nothing in that statutory language precludes standing for tester plaintiffs; if anything, 'no individual' and 'any person' are broad terms that necessarily encompass testers.").[2]

"Such is the nature of 'private-attorney-general' provisions:  Congress perceives a wrong but finds it too costly to enforce the law it passes to address that wrong."  *Native American Arts, Inc. v. Peter Stone Co., U.S.A., Inc.*, 222 F. Supp. 3d 643, 647 (N.D. Ill. 2016), *appeal docketed*, No. 16-

---

[2] *See also Adams v. SHRI Dwarkesh Investments, LLC*, No. 6:15-cv-03261-MDH, 2015 WL 6755321, at *3 (W.D. Mo. Nov. 4, 2015) ("Federal appellate case law makes clear, however, that 'tester' status does not deprive a plaintiff of standing under Title III of the ADA."); *Gordon v. Virtumundo, Inc.*, 575 F.3d 1040, 1069 (9th Cir. 2009) ("we accord standing to individuals who sue defendants that fail to provide access to the disabled in public accommodation as required by the Americans with Disabilities Act ("ADA"), ***even if we suspect that such plaintiffs are hunting for violations just to file lawsuits***.") (Gould, J., concurring) (emphasis added); *Molski v. Evergreen Dynasty Corp.*, 521 F.3d 1215, 1220 (9th Cir. 2008) ("while self-interest surely drives serial access litigation in part, the reason there *can* be so many lawsuits about access to public accommodations is that there are so many violations of the laws that seek to assure access.") (Berzon, J., dissenting from denial of rehearing en banc) (emphasis in original); *Molski v. Evergreen Dynasty Corp.*, 500 F.3d 1047, 1062 (9th Cir. 2007) ("For the ADA to yield its promise of equal access for the disabled, it may indeed be necessary and desirable for committed individuals to bring serial litigation advancing the time when public accommodations will be compliant with the ADA."); *D'Lil v. Best Western Encina Lodge & Suites*, 538 F.3d 1031, 1040 (9th Cir. 2008) (same).

4278 (7th Cir. Dec. 30, 2016). "[W]ith damages far outstripping the actual loss, it is not surprising

that suits like this are filed; private-attorney-general statutes are meant to encourage this." *Id.* "The

fact that statutes . . . give rise to 'cottage industries' can't be laid at the feet of attorneys who take

advantage of them." *Id.* "The statute is what it is, and judges must implement its rule whether or not

they think it wise . . . ." *Blue Cross Blue Shield of Massachusetts, Inc. v. BCS Ins. Co.*, 671 F.3d 635,

638 (7th Cir. 2011).

### 8.     Plaintiff's Number of Lawsuits Is Irrelevant to Plaintiff's Standing.

NAFCU contends that Plaintiff could not have been injured from encountering Defendant

ABNB's inaccessible website because Plaintiff has filed multiple actions in the state of Virginia.

NAFCU's blatant attempt to bias the Court should be rejected.  As a federal court held in a recently

published decision in response to a similar argument, "[t]his assertion is wholly irrelevant to a motion

for dismissal under Rule 12(b)(6) or 12(b)(1)." *Gniewkowski v. Lettuce Entertain You Enters., Inc.*,

251 F. Supp. 3d 908, 918 (W.D. Pa. 2017); *De La Rosa v. Lewis Foods of 42nd Street, LLC*, 124 F.

Supp. 3d 290, 293 n.5 (S.D.N.Y. 2015) (stating that the fact that the ADA plaintiff is a "frequent

filer" who is a plaintiff in dozens of cases "does not affect the Court's analysis"); *Haynes v. Interbond

Corp. of America*, No. 17-CIV-61074, 2017 WL 4863085, at *2 (S.D. Fla. Oct. 16, 2017).

### 9.     *Haynes v. Interbond Corp. of America* Is Directly on Point.

NAFCU ignores the decision in *Haynes v. Interbond Corp. of America*, No. 17-CIV-61074,

2017 WL 4863085, at *2 (S.D. Fla. Oct. 16, 2017), which is directly on point.  In *Haynes*, a blind

individual commenced an action under Title III of the ADA against the owner and operator of a

website alleging that it was inaccessible to persons who are visually impaired. *Id.* at *1.  The plaintiff

alleged that he was a "tester" who files lawsuits against entities that maintain websites he believes to

be not compliant with the ADA's requirements. *Id.*  The defendant moved to dismiss the operative

complaint for lack of subject matter jurisdiction based on lack of Article III constitutional standing to sue.  *Id.*  The district court held that the plaintiff had sufficiently alleged enough to establish Article III standing to sue.  *Id.* at *2.  The district court explained its reasoning as follows:

> "Plaintiff has standing to challenge BrandsMartUSA.com's compliance with Title III of the ADA based on his status as a tester.  The Eleventh Circuit has held that, as a general matter, a plaintiff's status as a tester does not deprive him of standing to maintain a civil action for injunctive relief under Title III.  *Houston v. Marod Supermarkets, Inc.*, 733 F.3d 1323, 1332-34 (11th Cir. 2013).  *Houston* involved a tester's challenge of grocery store's failure to remove physical architectural barriers. *See* 42 U.S.C. § 12182(b)(2)(A)(iv).  ***The present case, by contrast, involves Title III's dictates against a public accommodation's failure to make reasonable accommodations and to take steps necessary to provide auxiliary aids and services to blind persons.***  *See id.* § 12182(b)(2)(A)(ii)-(iii).  ***But that distinction is does not change the standing calculus in any way.***  Like in *Houston*, the Plaintiff alleges that he is being denied the right not to be discriminated against in the full and equal enjoyment of public accommodations allegedly covered by Title III.
>
> Plaintiff's status as a tester does not, on its own, provide him with standing to sue. Rather, "[t]he 'injury-in-fact' demanded by Article III requires an additional showing when injunctive relief is sought."  *Houston*, 733 F.3d at 1328.  To have standing to seek prospective injunctive relief—the only form of relief a plaintiff may seek under Title III, *see id.* at 1329; 42 U.S.C. §§ 2000a-3(a) & 12188(a)—a plaintiff "must show a sufficient likelihood that he will be affected by the allegedly unlawful conduct in the future."  *Wooden v. Bd. of Regents of Univ. Sys. of Ga.*, 247 F.3d 1262, 1283 (11th Cir. 2001). "Because injunctions regulate future conduct, a party has standing to seek injunctive relief only if the party alleges, and

ultimately proves, a real and immediate—as opposed to a merely conjectural or hypothetical—threat of future injury." *Church v. City of Huntsville*, 30 F.3d 1332, 1337 (11th Cir. 1994) (citing *City of Los Angeles v. Lyons*, 461 U.S. 95, 102 (1983)).

> *The Court is of the view that Plaintiff has sufficiently alleged facts in his Amended Complaint to support his standing to obtain injunctive relief*. Plaintiff states, *inter alia*, that he "continues to attempt to utilize the website and/or plans to continue to attempt to utilize the website in the near future." [DE 19] ¶ 12. And this injury, Plaintiff alleges, will continue until Defendant's website is accessible to blind persons. *See id.*¶¶ 13-18. *Plaintiff's allegations, the Court concludes, are real and immediate, not conjectural or hypothetical.*

*Haynes*, 2017 WL 4863085, at *2 (emphasis added).

Plaintiff's allegations, here, are indistinguishable from those alleged in *Haynes*. (Compl. ¶¶ 14, 15.)

### 10.   "Membership" Does Not Determine Standing to Sue.

NAFCU repeats Defendant's argument that Plaintiff cannot challenge the inaccessibility of Defendant's website because he is not in the "membership field" of Defendant's credit union. NAFCU ignores, however, that a plaintiff's enrollment or membership in an organization, or lack thereof, does not determine his standing to sue. Indeed, NAFCU points to no authority holding as much. NAFCU ignores that the ADA does not impose a "client" or "customer" requirement to sue for relief. The Supreme Court of the United States has affirmatively confirmed almost two decades ago that Title III of the ADA has no "clients or customers" limitation. *PGA Tour v. Martin*, 532 U.S. 661, 679, 121 S. Ct. 1879 (2001); *see also Molski v. M.J. Cable, Inc.*, 481 F.3d 724, 733 (9th Cir. 2007) ("One need not be a client or customer of a public accommodation to feel the sting of its

14

discrimination."); *id.* ("Title III's broad general rule contains no express 'clients or customers' limitation . . . .") (quoting *PGA Tour*, 532 U.S. at 679).

In addition, NAFCU ignores the fact that in *Gniewkowski v. Lettuce Entertain You Enterprises, Inc.*, 251 F. Supp. 3d 908 (W.D. Pa. 2017), the federal district court rejected in a published opinion a similar argument asserted by a defendant bank predicated on the plaintiff not being an account holder of the bank by pointing out the bank's website enables a person without an account to "learn what services [the bank] has to offer potential customers." *Id.* at 918.  The same is certainly true here as NAFCU cannot reasonably dispute that Plaintiff could certainly attempt to learn what services ABNB provides to potential customers via its website and to obtain other information if it were equally accessible.

The holding in *Gniewkowski* should not come as a surprise.  "The ADA guarantees the disabled more than mere access to public facilities; it guarantees them 'full and equal enjoyment.'" *Baughman v. Walt Disney World Co.*, 685 F.3d 1132, 1135 (9th Cir. 2012).  "Public accommodations must start by considering how their facilities are used by non-disabled guests and then take reasonable steps to provide disabled guests with a like experience." *Id.*  Thus, Plaintiff should be able to enjoy the same experience on Defendant's publicly-accessible website as does a non-disabled visitor to such website.

It is beyond dispute that Defendant's website is a service, privilege, and advantage of its branch location that is offered to *all* patrons and ***potential*** patrons on the internet, irrespective of credit-union membership.  Unlike sighted internet users, the Complaint has alleged that Defendant denies full and equal access only to *disabled* internet users who are sight-impaired.  That deprives such users of "full and equal enjoyment" as required by the ADA.  42 U.S.C. § 12182(a).  The Complaint alleges that Plaintiff would browse Defendant's website if it were accessible.  (Compl. ¶

14.)  Plaintiff has standing to seek an injunction requiring that it render its website accessible to him. *Haynes*, 2017 WL 4863085, at \*2 (holding that a "tester" plaintiff had standing to obtain injunctive relief); *Access Now, Inc., et al. v. Blue Apron, LLC,* No. 17-CV-116-JL, 2017 WL 5186354, at \*11 (D.N.H. Nov. 8, 2017) ("[T]he individual plaintiffs have standing to seek an injunction requiring [defendant] to render its website accessible to <u>them</u>.") (emphasis in original).

> **11.    If the Complaint's Allegations Are Insufficient to Allege Standing to Sue, then the Court Should Grant Leave to Amend.**

If the Court determines that the Complaint's factual allegations are insufficient to satisfy Article III's requirements, then the Court can and should grant leave to amend.

> **12.    Even If the Court Dismisses the Action for Lack of Standing, NAFCU's Contention that Dismissal Should Be "With Prejudice" Is Wrong as a Matter of Law.**

Even if the Court dismisses the action for lack of constitutional standing, NAFCU's contention that the dismissal should be "with prejudice" (NAFCU's proposed Amicus Br. at 4), is wrong as a matter of law.  If the Court dismisses Plaintiff's suit on jurisdictional grounds, the dismissal can only be without prejudice.  "A dismissal for lack of standing—or any other defect in subject matter jurisdiction—must be one without prejudice, because a court that lacks jurisdiction has no power to adjudicate and dispose of a claim on the merits."  *Southern Walk at Broadlands Homeowner's Ass'n, Inc. v. OpenBand at Broadlands, LLC*, 713 F.3d 175, 185 (4th Cir. 2013); *see* Fed. R. Civ. P. 41(b); *Semtek Int'l Inc. v. Lockheed Martin Corp.*, 531 U.S. 497, 505, 121 S. Ct. 1021 (2001); *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 93–94, 118 S. Ct. 1003 (1998); *Interstate Petroleum Corp. v. Morgan*, 249 F.3d 215, 222 (4th Cir. 2001) (en banc).  That NAFCU would make such a

fundamental error in addressing how constitutional standing works raises serious questions about its

legal analysis.

## **CONCLUSION**

For the reasons set forth herein, the Court should deny NAFCU's motion for leave to file brief

as Amicus Curiae.

Respectfully submitted,

/s/ Thomas E. Strelka
Thomas E. Strelka, VA Bar No. 75488
L. Leigh R. Strelka, VA Bar No. 73355
STRELKA LAW OFFICE, PC
119 Norfolk Avenue, SW,
Warehouse Row, Suite 330
Roanoke, Virginia 24011
Phone: (540) 283-0802
thomas@strelkalaw.com
leigh@strelkalaw.com
*Counsel for Plaintiff*

17

**Certificate of Service**

I hereby certify that on this 22nd day of December 2017, I electronically filed the foregoing using the Court's CM/ECF filing system, which will then send a notification of electronic filing (NEF) to:

John M. Bredehoft, Esq., VA Bar No. 33602
Kaufman & Canoles, P.C.
150 West Main Street, Suite 2100
Norfolk, Virginia 23510

Randy C. Sparks, Esq., VA Bar No. 40723
Kaufman & Canoles, P.C.
Two James Center
1021 East Cary Street, Suite 1400
Richmond, Virginia 23219

Edward Lee Isler, Esq., Va. Bar No. 27985
Isler Dare, P.C.
1945 Old Gallows Road, Suite 650
Vienna, Virginia 22182

/s/ Thomas E. Strelka